MORGAN, LEWIS & BOCKIUS LLP
Barbara J. Miller, Bar No. 167223
Bryan L. Jarrett, Bar No. 278176
600 Anton Blvd., Suite 1800
Costa Mesa, CA  92626
Tel:     949.399.7000
Fax:    949.399.7001
barbara.miller@morganlewis.com
bjarrett@morganlewis.com

MORGAN, LEWIS & BOCKIUS LLP
Sacha M. Steenhoek, Bar No. 253743
One Market, Spear Street Tower, 5th Floor
San Francisco, CA 94105
Tel:     415.442.1000
Fax:    415.442.1001
ssteenhoek@morganlewis.com

Attorneys for Defendant
BEST BUY STORES, L.P.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STARVONA HARRIS, individually and on behalf of those similarly situated,<br><br>                              Plaintiff,<br><br>vs.<br><br>BEST BUY STORES, L.P., a limited partnership,<br><br>                              Defendant. | Case No. 15-cv-00657-HSG<br><br>**DEFENDANT BEST BUY STORES, L.P.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, MOTION FOR PARTIAL SUMMARY JUDGMENT OF PLAINTIFF STARVONA HARRIS'S CLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:          March 24, 2016<br>Time:         2:00 p.m.<br>Dept.:        Courtroom 15 (18th Floor)<br>Judge:        Hon. Haywood S. Gilliam, Jr. |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

<u>**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE**</u>

<u>**ALTERNATIVE, MOTION FOR PARTIAL SUMMARY JUDGMENT**</u>

**TO PLAINTIFF AND HER ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on March 24, 2016 at 2:00 p.m., or as soon thereafter as this matter may be heard in Courtroom 15 of the above-entitled Court, located at 450 Golden Gate Ave., San Francisco, California 94102, Defendant Best Buy Stores, L.P. ("BB") will and hereby does move this Court, pursuant to Federal Rule of Civil Procedure 56, for an order granting summary judgment or, in the alternative, for partial summary judgment on Plaintiff Starvona Harris's Complaint in this action as follows:

A.  For summary judgment in favor of BB and against Harris; or

B.  Alternatively, if for any reason summary judgment as to Harris's entire action is not granted, for partial summary judgment in favor of BB and against Harris on each of the following issues:

1.  Harris's First Claim for Relief for failure to pay overtime wages in violation of FLSA because BB properly calculated Harris's regular rate of pay;

2.  Harris's First Claim for Relief for failure to pay overtime wages in violation of FLSA because BB paid Harris all of the overtime wages to which she was entitled;

3.  Harris's Second Claim for Relief for failure to pay overtime wages in violation of California law because BB properly calculated Harris's regular rate of pay;

4.  Harris's Second Claim for Relief for failure to pay overtime wages in violation of California law because BB paid Harris all of the overtime wages to which she was entitled;

5.  Harris's Second Claim for Relief for failure to pay overtime wages in violation of California law because no private right of action exists for violation of Labor Code Section 204;

6.  Harris's Second Claim for Relief for failure to pay overtime wages in violation of California law because BB timely paid Harris;

7.  Harris's Third Claim for Relief for failure to make payments within the required time in violation of California law upon employment termination because the claim is derivative of Harris's other claims;

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

1

DEFENDANT BEST BUY STORES, L.P.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OF
PLAINTIFF STARVONA HARRIS'S CLAIMS

8.   Harris's Third Claim for Relief for failure to make payments within the required time in violation of California law upon employment termination because a good-faith dispute exists as to whether Harris was entitled to any additional overtime pay;

9.   Harris's Fourth Claim for Relief for failure to provide proper itemized wage statements in violation of California law because this claim is derivative of Harris's other claims;

10. Harris's Fourth Claim for Relief for failure to provide proper itemized wage statements in violation of California law because any violation was not intentional and knowing by BB;

11. Harris's Fourth Claim for Relief for failure to provide proper itemized wage statements in violation of California law because Harris's wage statements do not violate California Labor Code Section 226(a);

12. Harris's Fifth Claim for Relief for failure to provide reimbursements in violation of California law because Harris's purported business expenses were not reasonable or necessary;

13. Harris's Sixth Claim for Relief for unfair competition in violation of California law because this claim is derivative of Harris's other claims;

14. Harris's Sixth Claim for Relief for unfair competition in violation of California law because the unfair competition law cannot be used to recover penalties or business expenses;

15. Harris's Seventh Claim for Relief for failure to produce her personnel file and employment records because BB properly provided to Harris all of the files to which she was entitled.

16. Harris's Eighth Claim for Relief for violations of the California Private Attorneys General Act under Labor Code Section 2698 *et seq.* because this claim is derivative of Harris's other claims; and

This Motion is brought pursuant to Federal Rule of Civil Procedure 56 on the ground that there is no genuine issue of any material fact regarding any of Harris's claims, and thus BB is entitled to judgment as a matter of law for the reasons set forth above.

This Motion is based on this Notice of Motion and Motion; the Memorandum of Points and Authorities included herein; the Declarations of Bryan L. Jarrett, Kietra Grate, Brendan McKeon, Bonny Nelson, David Knapp, Timothy Poth, Leah Kropp, and Adam Rice filed herewith and all the exhibits attached thereto; the deposition testimony of Harris, Kropp, and McKeon; all pleadings and

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

2

DEFENDANT BEST BUY STORES, L.P.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OF
PLAINTIFF STARVONA HARRIS'S CLAIMS

1    papers on file in this action; and such other argument and evidence as may be presented to the Court

2    prior to or at the hearing on this Motion.

3        Dated: February 18, 2016             MORGAN, LEWIS & BOCKIUS LLP

4

5                                        By:  /s/ Barbara J. Miller

                                       BARBARA J. MILLER

6                                        BRYAN L. JARRETT

                                       Attorneys for Defendant

7                                        BEST BUY STORES, L.P.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT BEST BUY STORES, L.P.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OF
PLAINTIFF STARVONA HARRIS'S CLAIMS

# TABLE OF CONTENTS

**Page(s)**

I.   INTRODUCTION ........................................................................................................... 1

II.  RELEVANT FACTUAL BACKGROUND .................................................................... 2

    A.   Harris's Employment with BB ............................................................................ 2

    B.   BB Properly Calculated Overtime on Harris's Regular Hourly Pay .................... 3

    C.   BB Properly Paid Harris's STI Bonuses ............................................................. 3

    D.   BB Paid Harris Overtime on the Points She Received ........................................ 5

    E.   BB Allows Employees to Participate in an Employee Discount Program ............ 6

    F.   BB Pays for Business-Related Telephone Calls .................................................. 7

III. SUMMARY JUDGMENT STANDARD ....................................................................... 7

IV.  LEGAL ARGUMENT ................................................................................................... 8

    A.   BB Paid Harris All the Overtime She Was Owed ............................................... 8

        1.   BB Properly Paid Harris Overtime on Her Hourly Rate of Pay .............. 8

        2.   BB Properly Calculated Overtime on Harris's STI Payments ................. 9

        3.   BB Properly Excluded the Value of Points Awards, Overtime Paid on the Value of Points Awards, and Employee Discounts on Services from its STI Bonus Calculation ................................ 10

        4.   BB Properly Paid Harris Overtime on Her Points ................................. 13

        5.   BB Was Not Required to Pay Harris Additional Overtime for Her Participation in the Employee Discount Program .................................... 13

    B.   Harris's Second Cause of Action for Untimely Payment of Her STI Bonuses and Overtime on Points Fails As a Matter of Law ............................... 15

        1.   No Private Right of Action Exists for a Section 204 Violation ............... 16

        2.   BB Timely Paid Harris in Any Event ..................................................... 16

    C.   Harris's Third Claim for Relief for Failure to Pay All Wages Owed Upon Termination Fails Because a Good-Faith Dispute Exists .................................... 17

    D.   Harris's Fourth Claim for Relief for Failure to Provide Accurate Wage Statements Fails for Multiple Reasons ............................................................... 19

    E.   Harris's Fifth Claim for Relief for Failure to Reimburse Business Expenses Fails Because the Expenses at Issue Were Not Necessary or Reasonable ........... 21

    F.   Harris's Sixth Claim for Relief for Unfair Competition Should Be Dismissed ............................................................................................................ 22

    G.   BB Complied With Record Production Obligations ........................................... 23

    H.   Harris's Eighth Claim for Relief for PAGA Penalties Should Be Dismissed As Derivative ..................................................................................................... 24

V.   CONCLUSION ............................................................................................................ 25

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

i

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Alonzo v. Maximus, Inc.*
  832 F. Supp. 2d 1122 (C.D. Cal. 2011)..........................................................................18, 19

*Anderson v. Liberty Lobby, Inc.*
  477 U.S. 242 (1986)..............................................................................................................8

*Arizona Elec. Power Co-op., Inc. v. United States*
  816 F.2d 1366 (9th Cir. 1987)............................................................................................24

*Brock v. Two "R" Drilling Co.*
  789 F.2d 1177 (5th Cir. 1986)..............................................................................................9

*Campbell v. PricewaterhouseCoopers, LLP*
  602 F. Supp. 2d 1163 (E.D. Cal. 2009)..............................................................................18

*Celotex Corp. v. Catrett*
  477 U.S. 317 (1986)..............................................................................................................7

*Connecticut Nat. Bank v. Germain*
  503 U.S. 249 (1992)............................................................................................................24

*Dalton v. Lee Publ'ns, Inc.*
  2011 U.S. Dist. LEXIS 29835 (S.D. Cal. 2011) ................................................................20

*Harris v. Vector Mktg. Corp.*
  656 F. Supp. 2d 1128 (N.D. Cal. 2009) ........................................................................18, 20

*In re Wal-Mart Stores, Inc. Wage & Hour Litig.*
  505 F. Supp. 2d 609 (N.D. Cal. 2007) ...............................................................................23

*Jeske v. Maxim Healthcare Servs., Inc.*
  2012 WL 78242 (E.D. Cal. Jan. 10, 2012)..........................................................................16

*Johnson v. Hewlett-Packard Co.*
  809 F. Supp. 2d 1114 (N.D. Cal. 2011) ..............................................................................16

*MAI Sys. Corp. v. Peak Comp., Inc.*
  991 F.2d 511 (9th Cir. 1993)..................................................................................................7

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*
  475 U.S. 574 (1986) ...............................................................................................................7

*Miller v. Fairchild Indus., Inc.*
  797 F.2d 727 (9th Cir. 1986)..................................................................................................7

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

*Nelson v. Dollar Tree Stores, Inc.*
    2011 U.S. Dist. LEXIS 90531 (E.D. Cal. 2011) ......................................................23

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*
    210 F.3d 1099 (9th Cir. 2000).........................................................................7

*Novak v. Boeing Co.*
    2011 U.S. Dist. LEXIS 83031 (C.D. Cal. 2011) ......................................................21

*Rau v. Darling's Drug Store, Inc.*
    388 F. Supp. 877 (W.D. Pa. 1975) ........................................................14

*Rodriguez v. Taco Bell Corp.*
    2013 WL 5877788 (E.D. Cal. Oct. 30, 2013) ..................................................14, 15

*Rubin v. Wal-Mart Stores, Inc.*
    599 F. Supp. 2d 1176 (N.D. Cal. 2009) ......................................................22

*Slay v. CVS Caremark Corp.*
    2015 WL 2081642 (E.D. Cal. May 4, 2015) ...................................................16

*Tomlinson v. IndyMac Bank F.S.B.*
    359 F. Supp. 2d 891 (C.D. Cal. 2005)........................................................22

*Unger v. Fed. Nat'l Mortgage Ass'n, Inc.*
    2015 WL 4366319 (C.D. Cal. July 16, 2015) ..................................................16

*Villalpando v. Exel Direct Inc.*
    2014 WL 1338297 (N.D. Cal. Mar. 28, 2014) ................................................16

*Zator v. Sprint/United Mgmt. Co.*
    2011 WL 1157527 (S.D. Cal. 2011) ..........................................................8, 10

**CALIFORNIA CASES**

*Advanced-Tech Security Serv., Inc. v. Superior Ct.*
    163 Cal. App. 4th 700 (2008)...............................................................8, 10

*Alvarado v. Dart Container Corp. of Cal.*
    243 Cal. App. 4th 1200 (2016).................................................................13

*Amaral v. Cintas Corp.*
    163 Cal. App. 4th 1157 (2008)................................................................18

*Armenta v. Osmose, Inc.*
    135 Cal. App. 4th 314 (2005)...............................................................18

*Barnhill v. Robert Saunders & Co.*
    125 Cal. App. 3d 1 (1981).....................................................................18

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

*Briggs v. Eden Council for Hope & Opportunity*
19 Cal. 4th 1106, 969 P.2d 564 (1999) .................................................................24

*Caliber Bodyworks, Inc. v. Sup. Ct.*
134 Cal. App. 4th 365 (2005).................................................................................16

*Cortez v. Purolator Air Filtration Prods. Co.*
23 Cal. 4th 163 (2000) ...........................................................................................22

*Gattuso v. Harte-Hanks Shoppers, Inc.*
42 Cal. 4th 554 (2007) ......................................................................................21, 23

*Grissom v. Vons Co.*
1 Cal. App. 4th 52 (1991)........................................................................................21

*Huntington Mem. Hosp. v. Superior Ct.*
131 Cal. App. 4th 893 (2005)...............................................................................8, 10

*Korea Supply Co. v. Lockheed Martin Corp.*
29 Cal. 4th 1134 (2003) ..........................................................................................22

*Morgan v. United Retail, Inc.*
186 Cal. App. 4th 1136 (2010)................................................................................21

*Murphy v. Kenneth Cole Prods., Inc.*
40 Cal. 4th 1094 (2007) .....................................................................................22, 23

*Noe v. Superior Court*
237 Cal. App. 4th 316 (2015)............................................................................16, 24

*Nordstrom Comm'n Cases*
186 Cal. App. 4th 576 (2010)..................................................................................18

*People v. Durbin*
64 Cal. 2d 474 (1966) .............................................................................................22

*Prachasaisoradej v. Ralph's Grocery Co.*
42 Cal. 4th 217 (2007) ............................................................................................22

*Smith v. Rae-Venter Law Gr.*
29 Cal. 4th 345 (2002) ............................................................................................18

*Steinhebel v. L.A. Times Comms., LLC*
126 Cal. App 4th 696 (2005)...................................................................................11

*Vicko Ins. Serv. Inc. v. Ohio Indem. Co.*
70 Cal. App. 4th 55 (1999)................................................................................16, 24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

**FEDERAL STATUTES**

29 C.F.R. § 531.3(a) and (b) ..........................................................................................15

29 C.F.R. §§ 778.104, 778.110(a) ...................................................................................9

29 C.F.R. § 778.116 .......................................................................................................15

29 C.F.R. § 778.210 .........................................................................................................9

29 C.F.R. § 778.212(b) ...................................................................................................14

29 C.F.R. § 778.503 .........................................................................................................9

29 CFR 778.209(b) .........................................................................................................11

29 U.S.C. § 207 ..............................................................................................................13

29 U.S.C. § 207(a)(1) .......................................................................................................8

29 U.S.C. § 207(e)(1) ............................................................................................1, 13, 14

Fed. R. Civ. P. 56(a) .........................................................................................................7

FLSA ........................................................................................................................ passim

**CALIFORNIA STATUTES**

Cal. Code Regs. Title 8, § 13520 ...................................................................................18

Cal. Lab. Code § 203 ............................................................................................... passim

Cal. Lab. Code § 204 ...................................................................................1, 2, 8, 15, 16

Cal. Lab. Code § 210 .................................................................................................15, 16

Cal. Lab. Code § 226 ............................................................................................... passim

Cal. Lab. Code § 432 ..................................................................................................2, 23

Cal. Lab. Code § 510 ..................................................................................................8, 13

Cal. Lab. Code §1198 ........................................................................................................8

Cal. Lab. Code § 1198.5 .............................................................................................2, 23

Cal. Lab. Code § 2699(a), (c) .........................................................................................24

Cal. Lab. Code § 2802 .............................................................................................2, 21,22

PAGA ..............................................................................................................2, 24, 25

DEFENDANT BEST BUY STORES, L.P.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OF
PLAINTIFF STARVONA HARRIS'S CLAIMS

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

**OTHER AUTHORITIES**

DOL Wage and Hour Opinion Letter FLSA2006-4NA, 2006........................................................10

Wage and Hour Opinion Letter FLSA2009-27, 2009......................................................................9

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

vi

DEFENDANT BEST BUY STORES, L.P.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OF
PLAINTIFF STARVONA HARRIS'S CLAIMS

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Plaintiff Starvona Harris ("Harris" or "Plaintiff"), a former hourly employee of Defendant Best Buy Stores, L.P. ("BB"), wrongly asserts that BB failed to properly pay overtime wages relating to (1) her monthly Short-Term Incentive ("STI") bonuses, (2) recognition "points" that she received and could redeem for products or services, and (3) a portion of discounts that she enjoyed on purchases of BB services.  All of these claims are baseless.  Examination of Harris's time and pay records establish that BB meticulously calculated and paid all amounts that Harris earned.

First, BB properly calculated Harris's STI bonuses as a percentage of both certain Eligible Earnings and the overtime due on those Eligible Earnings.  The law is clear that an employer may simultaneously pay both a bonus and the applicable overtime premium on the bonus by paying the same percentage of both the Eligible Earnings and overtime on the Eligible Earnings.

Second, BB empowered managers to award recognition points to their employees pursuant to its Path to Excellence ("PTE") program.  Employees could use these points to purchase gift cards, merchandise, or services from a wide variety of vendors.  Some points awards were overtime eligible; others were not.  BB paid the PTE program vendor $.05 per point.  BB also reported employee taxable income of $0.05 per point and grossed up the award to pay all taxes on it.  If the points were overtime eligible, BB also paid overtime for any overtime hours worked during the week of the award.  Harris both worked overtime and received a points award during only one work week, and she received properly calculated overtime on this award.  Thus, Harris has no claim for overtime on points.

Third, BB offered employees a discount on services of up to 5% over BB's cost of providing the services (cost plus 5%).  BB treated a portion of this discount on services purchased as taxable income to the employee.  Any claim that BB should have paid overtime on discounted services that Harris purchased fails for two independent reasons:  (1) discounts are not measured by or dependent on hours worked, production, or efficiency and are therefore not part of the overtime calculation, 29 U.S.C. § 207(e)(1); and/or (2) Harris paid more than BB's cost of providing the services, meaning the discount had no actual cost to BB that could be included in the regular rate for overtime purposes.

Harris also claims that BB violated Cal. Lab. Code Section 204 by failing to timely pay her STI bonuses and overtime wages on points.  As a threshold matter, however, Harris cannot assert this

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

1
DEFENDANT BEST BUY STORES, L.P.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OF
PLAINTIFF STARVONA HARRIS'S CLAIMS

1   claim because no private right of action exists for Section 204 violations.  Moreover, BB always paid

2   Harris's STI bonuses in her next regularly scheduled paychecks after the STI amounts were

3   reasonably calculated, and BB always timely paid all of her overtime wages.

4          Next, Harris argues that BB did not reimburse her for reasonable and necessary cell phone

5   usage.  Any use by Harris of her personal cell phone, however, was neither reasonable nor necessary.

6   At Harris's store, BB made over thirty telephones available for employees to use.  Moreover, the store

7   offered a free WiFi connection for employee use.  Thus, Harris's decision to use her own cell phone

8   and/or cellular service, rather than one of the thirty store phones and store WiFi, was not necessary.

9   Lab. Code § 2802 did not obligate BB to reimburse Harris's voluntary use of her cell phone.

10          Harris also claims that BB failed to produce employment records pursuant to Lab. Code §§

11   226, 432, and 1198.5 (allegedly entitling her to $750).  But, as explained below, BB timely produced

12   to Harris every record to which she was entitled under these Sections.

13          Finally, Harris asserts claims for waiting-time penalties under Lab. Code § 203, failure to

14   provide accurate wage statements in violation of Lab. Code § 226, unfair competition, and penalties

15   under the California Private Attorneys General Act ("PAGA").  All of these claims fail because they

16   are derivative of Harris's underlying, meritless claims.  These derivative claims also fail because BB

17   had a good-faith belief that it properly calculated Harris's overtime.  Regardless, Harris's wage

18   statements fully complied with Section 226(a).

19          As discussed in detail below, all of Harris's claims fail as a matter of law.  Accordingly, this

    Court should enter summary judgment in favor of BB as to all of Harris's claims.

20   II.    **RELEVANT FACTUAL BACKGROUND**

21         A.    **Harris's Employment with BB**

22          BB operates large retail stores in California that sell appliances, televisions, and other

23   merchandise.  Harris worked at a BB store in San Francisco from about October 3, 2013 to about

24   September 13, 2014, when she resigned.  (*Id*., Ex. B (hereinafter cited as "Harris Dep.") at 239:14-22,

25   Ex. 12; Nelson Decl. ¶ 5; McKeon Decl. ¶ 3.)  Initially, Harris earned $12.00 per hour, which BB

26   increased to $13.00 on January 5, 2014.  (Nelson Decl. ¶ 5.)  BB paid employees on a bi-weekly basis

27   for the pay period that ended six days before the pay date.  (*Id.* ¶ 6, Ex. A.)  Harris's work week started

28   at 12:00 a.m. on Sunday and ended at 11:59 p.m. on Saturday.  (Poth Decl. ¶ 8.)

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

### B.   BB Properly Calculated Overtime on Harris's Regular Hourly Pay

To calculate Harris's overtime rate on her regular wages for a given pay period, BB's multiplied the overtime hours that she worked by 1.5 times her hourly rate.  (Nelson Decl. ¶ 7.)  BB then rounded up the resulting figure to the nearest penny.  (*Id.*)  Rounding up, on occasion, resulted in an overtime rate a bit higher than 1.5 times the hourly rate.  (*Id.*)  The overtime rates displayed on Harris's wage statements were the actual overtime rates that she received:

| Pay Date | Hourly Rate | Rate Used to Calculate OT Pay (1.5 * Hourly Rate) | Overtime ("OT") Hours | OT Calculation (OT Hours * 1.5) | OT Paid (Rounded to Nearest $.01) | OT Rate Paid (OT Paid/OT Hours) |
|---|---|---|---|---|---|---|
| 12/13/13 | $12.0000 | $18.0000 | 8.93 | $160.7400 | $160.74 | $18.0000 |
| 1/24/14 | $13.0000 | $19.5000 | 2.13 | $41.5350 | $41.54 | $19.5024 |
| 6/13/14 | $13.0000 | $19.5000 | 7.98 | $155.6100 | $155.61 | $19.5000 |
| 6/27/14 | $13.0000 | $19.5000 | 0.42 | $8.1900 | $8.19 | $19.5000 |
| 7/11/14 | $13.0000 | $19.5000 | 7.52 | $146.6400 | $146.64 | $19.5000 |
| 8/8/14 | $13.0000 | $19.5000 | 0.03 | $0.5850 | $0.59 | $19.6667 |
| 8/22/14 | $13.0000 | $19.5000 | 0.57 | $11.1150 | $11.12 | $19.5088 |
| 9/5/14 | $13.0000 | $19.5000 | 0.05 | $0.9750 | $0.98 | $19.6000 |
| 9/16/14 | $13.0000 | $19.5000 | 1 | $19.5000 | $19.50 | $19.5000 |

(*Id.*, Ex. A.)

### C.   BB Properly Paid Harris's STI Bonuses

After six months of employment, BB store employees participate in the STI program.  In February of 2014, Harris became eligible to participate in the Fiscal Year 2015 STI Plan.[1]  BB described the 2015 STI Plan in two documents:  (a) the FY '15 Short-Term Incentive Program Terms and Conditions (Rice Decl., Ex. B), and (b) the FY '15 Performance Objective and Short-Term Incentive Program Store Level (collectively, the "Plan") (*Id.*, Ex. A).  BB posted these Plan documents on its intranet site, and all employees could access the documents at any time.  (*Id.* ¶ 4.)

The Plan established the following formula for calculating Harris's STI bonus, if any:  (Harris's Total Eligible Earnings for the Fiscal Month) * (Store All Channel Revenue Incentive Target) * (Store All Channel Revenue Score).  (*Id.* ¶ 9, Ex. A, p. 7.)  Total Eligible Earnings included Harris's hourly pay and overtime pay for hours worked, not the value of points received or employee discounts.  (*Id.* ¶ 9; Ex. B, p. 2.)  The FY 2015 Store All Channel Revenue Incentive Target was 5% for Harris's position (store associate).  (*Id.* ¶ 9; Ex. A, pp. 2, 7.)  The Store All Channel Revenue Score was the store's

---

[1] BB operates on fiscal years, not calendar years.  The 2015 STI Plan ran from February 1, 2014 through January 31, 2015, which constituted the 2015 fiscal year.  (Rice Decl., Ex. B, p. 5.)

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

actual All Channel Revenue[2] compared to the store's budgeted All Channel Revenue for that fiscal month.  (*Id. ¶¶* 6, 9; *id.*, Ex. A, p. 7.)  BB determined the Score as follows:

| Actual Store All Channel Revenue as a Percentage of Budgeted Store All Channel Revenue | Score |
|---|---|
| 110% or higher | 2 |
| 107.5% - 109.99% | 1.75 |
| 105% - 107.49% | 1.5 |
| 102.50% - 104.99% | 1.25 |
| 100% - 102.49% | 1 |
| 98% - 99.99% | .75 |
| Less than 98% | 0 |

(*Id.*, Ex. A, p. 7.)  For example, if actual equaled budgeted Store All Channel Revenue (for a score of 1), Harris would receive 5% of her Total Eligible Earnings as a bonus for the fiscal month.

Given that All Channel Revenue depended on store performance over an entire fiscal month, BB could not calculate it until after the fiscal month closed.  (*Id. ¶* 8.)  In addition, BB allowed about seven days after the end of the fiscal month for returns and exchanges, so that they could be properly attributed to that month.  (*Id.*)  Thus, BB could not begin calculating All Channel Revenue until eight days after the end of the fiscal month.  (*Id.*)  Compiling all of the information necessary to determine each store's All Channel Revenue, calculating the numbers for each store nationwide, and auditing the results required about a week.  (*Id. ¶* 10.)  After finalizing the All Channel Revenue numbers, BB compared each store's actual and budgeted All Channel Revenue to calculate each store's All Channel Revenue Score, which generally took a few days.  (*Id.*)  Then, BB determined each employee's Total Eligible Earnings for work performed during the fiscal month, which could not happen until payroll for the last pay period of the fiscal month was finalized.  The pay date for the last pay period of the fiscal month could lag up to seven days behind the last day of the fiscal month.  (*Id.*)[3]  Thus, it required about three weeks after the close of a fiscal month to calculate STI bonuses (one week to close the books and two weeks to calculate the bonuses).  Once the bonus could be calculated, BB paid employees, including Harris, any STI bonus on the next regularly scheduled paycheck.  (*Id.*)

---

[2] Store All Channel Revenue equaled POS Sales (Product and Services), plus liquidation proceeds and credit cards, less returns, exchanges, price matches, and instant gift cards.  (*Id. ¶* 6, Ex. A, p. 4.)
[3] In Fiscal Year 2015, Eligible Earnings were based on pay periods that closest aligned to each fiscal month.  (*Id. ¶* 11, Ex. B, p. 2.)  For example, Best Buy used Harris's paychecks for the two pay periods of 2/2/14-2/15/14 and 2/16/14-3/1/14 to determine fiscal February earnings.  (*Id.*, Ex. B, p. 6.)  The pay date for the pay period ending 3/1/14 was 3/7/14.  (*Id.*)

Notwithstanding this painstaking process, Harris received her STI bonuses within 28 days of the final pay date for the fiscal month. (*Id.* ¶ 10; Ex. C.) The intervening pay date (*i.e.*, the one pay date between the close of the fiscal month and the payment of Harris's STI bonus) was for a pay period that ended only eight *calendar* days (five business days) after the pay date for the prior fiscal month. (*Id.* ¶ 10, Ex. B, p. 6.) BB could not reasonably complete and audit the calculations necessary to accurately determine STI payments within five business days after the final pay date for the prior fiscal month. (*Id.* ¶ 10.) BB therefore could not pay Harris's STI bonuses any earlier than it did. (*Id.*)

As an example, the first fiscal month Harris participated in the STI program ended on February 28, 2014. BB closed its books for that fiscal month on about March 8, 2014 (seven days later). BB then compiled store revenue data, audited the calculations, compared audited results to the budget, and assigned a store All Channel Revenue Score during the next two weeks—by about March 22 (two weeks after closing its books on the fiscal month). And Harris's next regularly scheduled paycheck was April 4 (for the pay period beginning 3/16/14 and ending 3/29/14), which is when she received her STI bonus. (*See id.*, Ex. B, p. 6, Ex. C; Nelson Decl., Ex. A.)

In fiscal 2015, Harris received STI payments for the fiscal months of February, March, April, June, and August. Her store did not receive a high enough score to be eligible for May or July STI payments. (Rice Decl., Ex. C.) The Plan and undisputed facts show that BB paid Harris all of her STI payments in the next regularly scheduled paycheck after the amounts were reasonably calculated. (Rice Decl., Exs. A-C; Nelson Decl., Ex. A.)

### D. BB Paid Harris Overtime on the Points She Received

BB vests its managers with discretion to recognize employees via awards of "points" under its PTE program. Employees may use points to purchase gift cards, merchandise, and other items from a wide variety of vendors. (Compl. ¶ 17.) BB contracts with a vendor, BIG, to provide and administer the PTE program. Employees receive points for different reasons including length of service, completing certain trainings, contests, and discretionary manager on-the-spot recognition. (Knapp Decl. ¶ 4.) As to the fourth category—manager on-the-spot recognition—the manager nominates an employee by completing nomination data including the date, reason for the nomination, and message to accompany the points award. (*Id.* ¶ 9.) The employee then receives an email with information about the awarded points, a certificate, and the message from the awarding manager.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

DEFENDANT BEST BUY STORES, L.P.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OF
PLAINTIFF STARVONA HARRIS'S CLAIMS

BIG classifies points as either overtime eligible with an "element" code "Points Rcvd GU," or as not overtime eligible with an "element" code "NFLSA GU." (Poth Decl. ¶ 6.) If coded as Points Rcvd GU, BIG also provides the start and end date of the award earnings period. (*Id*. ¶ 6.) Awards for contests, length of service, and trainings were overtime eligible. Manager awards could be either overtime eligible or not overtime eligible. Harris received manager awards that were not overtime eligible (NFSLA) on December 12, 2013; December 28, 2013; January 23, 2014; February 18, 2014; and March 27, 2014. (Poth Decl. ¶ 9.) She received awards that were overtime eligible on July 6, 2014; July 13, 2014; July 15, 2014; ***July 25, 2014***; August 3, 2014; and August 6, 2014. (*Id*.) ***The only work week that Harris both received an award of points and worked overtime was the week of July 20-26, 2014.*** (*See id.*; Nelson Decl., Ex. A; Kropp Decl., Ex. A.)

BB treats the amount it pays BIG per point ($0.05) as taxable income. (Poth Decl. ¶ 5.) BB pays the amount of taxes owed on the points, so that the award does not decrease the employee's wages. (*Id*.) The employee's pay statement reflects the grossed-up value of the award (the award value plus taxes), total taxes paid (in aggregate), and the value deducted for the award itself. (*See id.*). BB's explained this process to employees, and Harris's own wage statement for the pay period of October 13-26, 2013 contains an explanation in the "Messages" section. (*See* Nelson Decl., Ex. A at 1.)

When Harris received overtime eligible points ("Points Rcvd GU"), she also received an overtime payment ("Points Rcvd OT") if she worked overtime during the work week of the award. To calculate overtime, BB divided the grossed-up points value by non-overtime hours worked, multiplied by 1.5, and then multiplied by the number of overtime hours worked. (*Id*.) During the one week in which Harris received points *and* worked overtime, she was properly paid overtime as follows:

| Work week | Regular Hours | OT Hours | Grossed-Up Points Value | Points Rate (Value/Hours) | Points OT Rate | OT Paid (OT Rate * OT Hours) |
|---|---|---|---|---|---|---|
| 7/20-7/26/14 | 34.43 | .03 | $15.08 | $0.44 | $0.66 | $0.02 |

(Nelson Decl., Ex. A; Kropp Decl., Ex. A; Knapp Decl. ¶ 8; Harris Dep. at 109:2-5; 140:7-11.)

### E.   BB Allows Employees to Participate in an Employee Discount Program

BB allows employees to purchase BB services at a discounted price pursuant to its Employee Discount Policy. (Poth Decl., Ex. A.) The Employee Discount Policy specifies that, with respect to purchases of services, "the IRS considers anything greater than a 20% discount to be taxable income. Therefore, you will be taxed on the difference between the 20% off price and the . . . Employee

DEFENDANT BEST BUY STORES, L.P.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OF PLAINTIFF STARVONA HARRIS'S CLAIMS

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

Discount price.  This amount will appear as Merchandise R[c]vd on your pay statement."  (*Id.* at 5.)
Harris at times purchased services pursuant to her employee discount (Poth Decl., Ex. B), and her wage
statements reflected the resulting taxable income as "Merchandise Rcvd" (Poth Decl., Ex. A at 5;
Nelson Decl., Ex. A).  Harris paid more than BB's cost of services for all of the discounted services
that she purchased.  (Poth Decl. ¶ 12, Ex. A.)

### F.    BB Pays for Business-Related Telephone Calls

During Harris's employment, BB's expense reimbursement policy provided for reimbursement
of business-related telephone calls.  (Grate Decl., Ex. A, p. 5.)  Yet Harris never submitted any
reimbursement requests for such phone calls.  (*Id.* ¶ 5.)  In fact, the only requests Harris ever submitted
were for mileage reimbursements for four trainings that she attended.  (*Id.*)

Harris's store offered more than thirty telephones for employee use.  (McKeon Decl. ¶ 5.)  All
of these telephones called out of the store, and employees could use them for business purposes.  (*Id.*)
Moreover, employees can ascertain merchandise availability on BB's computer system through
computers located throughout the store, which is far more efficient than calling another store.  (*Id.*)
Furthermore, there was, and still is, free WiFi at the store.  (*Id.*)  Thus, Harris never needed to use her
personal cell phone or her cellular data plan for business purposes.

## III.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if there is "no genuine dispute as to any material fact" and the
moving party is "entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  BB can satisfy this
standard by identifying an absence of evidence supporting Harris's claims.  *See Celotex Corp. v.
Catrett*, 477 U.S. 317, 325 (1986); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1105
(9th Cir. 2000) (stating that summary judgment burden satisfied by showing an absence of evidence to
support an essential element of a claim).   The party opposing a motion for summary judgment may not
rely upon mere allegations in pleadings, but must set forth specific facts establishing a genuine issue for
trial.  *See MAI Sys. Corp. v. Peak Comp., Inc.*, 991 F.2d 511, 518 (9th Cir. 1993); *Miller v. Fairchild
Indus., Inc.*, 797 F.2d 727, 731 (9th Cir. 1986).  In this regard, the opposing party "must do more than
simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus.
Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Indeed, "summary judgment may be appropriate
even if germane facts are contested, where the non-movant fails to provide substantial evidence of the

Morgan, Lewis &
Bockius LLP
Attorneys at Law
Costa Mesa

disputed facts." *See Moore's Federal Practice* § 56.11[6][b], 56-120; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (pointing to a "mere scintilla" of evidence also is not sufficient to defeat summary judgment). Here, Harris cannot present substantial specific admissible evidence that establishes the essential elements of her claims.

## IV.   LEGAL ARGUMENT

### A.   BB Paid Harris All the Overtime She Was Owed

Harris's first claim (violation of the FLSA) and second claim (violation Labor Code §§ 204, 510, and 1198) are based upon an alleged failure to pay Harris overtime on her monthly STI payment, points she received, and the value of discounted services that she purchased. (Compl. ¶ 17.) For the various reasons delineated below, these allegations are demonstrably wrong.

#### 1.   BB Properly Paid Harris Overtime on Her Hourly Rate of Pay

As a threshold matter, to the extent Harris asserts that BB failed to properly calculate her overtime rate on her regular hourly earnings, the claim is baseless. The FLSA requires an employer to pay non-exempt employees for any hours worked in excess of forty hours in one work week at the rate of no less than 1.5 times the regular rate of pay. 29 U.S.C. § 207(a)(1). California law requires an employer to pay non-exempt employees for any hours worked in excess of eight hours in one workday and forty hours in one work week "at the rate of no less than one and one-half times the regular rate of pay." Cal. Lab. Code § 510. Neither the Wage Orders nor the California Labor Code, however, explicitly defines the term "regular rate of pay." Thus, the California Division of Labor Standards Enforcement ("DLSE"), which is charged with enforcing California's Wage Orders, recommends that the courts look to the FLSA and adopt its definition of "regular rate of pay." DLSE Manual § 49.1.2 ("In determining what payments are to be included in or excluded from the calculation of the regular rate of pay, California law adheres to the standards adopted by the U.S. Department of Labor to the extent that those standards are consistent with California law."). *See also Advanced-Tech Security Serv., Inc. v. Superior Ct.*, 163 Cal. App. 4th 700, 707 (2008) (explaining that California law looks to FLSA to determine what is excludable from compensation when calculating the "regular rate"); *Huntington Mem. Hosp. v. Superior Ct.*, 131 Cal. App. 4th 893, 902-03 (2005) (holding that as long as there is no California authority on whether a certain type of remuneration must be included in the regular rate of pay, federal law dictates whether inclusion is required); *Zator v. Sprint/United Mgmt. Co.*, 2011 WL 1157527, at *8 (S.D. Cal. 2011) ("California looks to the Fair Labor Standards Act to

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

1  determine what is excludable from compensation and what constitutes the regular rate of pay.").

2  The regular rate is a weekly calculation, and if the employee is paid at one rate during the

3  week, the correct overtime rate is 1.5 times that rate.  29 C.F.R. §§ 778.104, 778.110(a).  Here, Harris

4  received only one rate of pay during any particular work week, and she always received at least 1.5

5  times that amount for each overtime hour she worked.  (Nelson Decl., Ex. A.)  Harris cannot present

6  any evidence that BB miscalculated her overtime.

7  **2.  BB Properly Calculated Overtime on Harris's STI Payments**

As referenced above, BB's monthly STI payments to Harris were a percentage of the eligible

8  straight time *and* overtime earnings.  (Rice Decl. ¶ 13.)  Therefore, as a matter of mathematics, Harris

9  received all of the additional overtime to which she was entitled.  For example, if Harris's Eligible

10  Earnings were $10 per straight-time hour and $15 per overtime hour, a 10% bonus on Eligible Earnings

11  pays $1.00 for each straight-time hour and $1.50 for each overtime hour.

12  Federal regulations explain how a percentage bonus satisfies the overtime requirements:

13  In some instances the contract or plan for the payment of a bonus may also
provide for the simultaneous payment of overtime compensation due on
14  the bonus.  For example, a contract made prior to the performance of
services may provide for the payment of additional compensation in the
15  way of a bonus at the rate of 10 percent of the employee's straight-time
earnings, and 10 percent of his overtime earnings.  In such instances, of
16  course, payments according to the contract *will satisfy in full the overtime
provisions of the [FLSA] and no recomputation will be required*.
17

18  29 C.F.R. § 778.210 (emphasis added); *see also* 29 C.F.R. § 778.503 ("As explained in § 778.210 of

19  this part, a true bonus based on a percentage of total wages—both straight time and overtime wages—

20  satisfies the [FLSA's] overtime requirements, if it is paid unconditionally.  Such a bonus increases both

21  straight time and overtime wages by the same percentage, *and thereby includes proper overtime

22  compensation as an arithmetic fact*." (emphasis added)).  Both federal case law and administrative

23  guidance are equally clear that percentage bonuses fully satisfy overtime requirements.  *Brock v. Two

24  "R" Drilling Co.*, 789 F.2d 1177, 1179 (5th Cir. 1986) ("[T]he payment of a bonus calculated as a

25  percentage of the employee's total wages . . . generally does not require recomputation of the 'regular'

26  rate of pay for purposes of section 207(a) because the bonus is deemed to increase the straight time pay

27  and the overtime pay by the same percentage, thus not altering the ratio between them."); U.S. Dep't of

28  Labor ("DOL") Wage and Hour Opinion Letter FLSA2009-27, 2009 DOLWH LEXIS 31, at *6 (Mar.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

9

DEFENDANT BEST BUY STORES, L.P.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OF
PLAINTIFF STARVONA HARRIS'S CLAIMS

2, 2009) ("[A] bonus paid as a predetermined percentage of an employee's straight time and overtime compensation increases the straight-time and overtime earnings by the same percentage, and thereby includes proper overtime-premium compensation without need for additional computation."); DOL Wage and Hour Opinion Letter FLSA2006-4NA, 2006 DOLWH LEXIS 20, at *2-3 (Feb. 17, 2001) (stating that no additional computation or payment of overtime is required when monthly bonus payments are calculated as a percentage because "the same predetermined percentage is applied to the employee's straight time and overtime earnings" and such bonus payments "automatically include the overtime pay due under the FLSA"). And, California follows the FLSA in determining how to calculate overtime. *See, e.g., see also Advanced-Tech*, 163 Cal. App. 4th at 707; *Huntington Mem.*, 131 Cal. App. 4th at 902-03; *Zator*, 2011 WL 1157527, at *8.

### 3. BB Properly Excluded the Value of Points Awards, Overtime Paid on the Value of Points Awards, and Employee Discounts on Services from its STI Bonus Calculation

Harris appears to claim that calculation of her STI bonus should have included the taxable value of employee discounts and the taxable value of points that she received, as well any overtime on the taxable value of such points and overtime. If Harris is actually making such an argument, it is utterly misguided. First, and conclusively, Harris did not earn an STI payment for any fiscal month in which she also earned overtime attributable to points. Indeed, the only work in which Harris both received an award of points and worked overtime was July 20 to July 26 (*see* Poth Decl. ¶ 9; Nelson Decl., Ex. A; Kropp Decl., Ex. A.), which took place during the fiscal July 2015 (*see* Rice Decl., Ex B, p. 5). Harris's store did not achieve 98% of the budgeted revenue for that month, so she earned no STI incentive for that month. (Rice Decl., Ex. A, p. 7, Ex. C.) Thus, because Harris never earned overtime on points during a month in which she received an STI bonus, she cannot assert a claim that her STI bonus calculations should have included overtime on the value of her points.

Even if Harris had earned overtime on the value of points during any fiscal month in which she also received an STI bonus, BB's STI bonus calculations would nevertheless have been proper. After all, under the terms of the STI program, BB agreed to pay a bonus as a percentage of *Eligible Earnings*—which ***did not include*** taxable income from the taxable value of points received or employee discounts on services. (Rice Decl. ¶ 9; *see also* Harris Dep. at 44:11-15, 48:18-49:9, 81:25-84:16.) Thus, because these ***non***-Eligible Earnings could not be included in Harris's STI calculations,

DEFENDANT BEST BUY STORES, L.P.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OF PLAINTIFF STARVONA HARRIS'S CLAIMS

overtime on these **non**-Eligible Earnings (if any) likewise could not be included in her STI calculations.

Additionally, no overtime is ever owed on the taxable value of an employee discount; the taxable value of employee discounts is always excludable from the regular rate. (*See* Section V.A.5 below). This reality provides an independent basis to reject any claim that the value of discounts received must be included in calculation of overtime owed on the STI bonus.

Certain legal truths underlie the basic math. First, the straight time amount owed under any bonus plan is established pursuant to the agreement of the employer and employee, and courts will not second guess this agreement. *See, e.g.*, *Steinhebel v. L.A. Times Comms., LLC*, 126 Cal. App 4th 696, 705 (2005) (specifying that the employees' right to commission payments was "governed by the provisions of the [a]greement" (citations omitted)). Second, to calculate overtime on a non-discretionary bonus, the employer may divide the bonus by the hours worked during the earnings period to get a "Bonus Regular Rate," multiply the Bonus Regular Rate by the number of overtime hours worked in the earnings period, and then multiply this amount by one-half. *See* 29 CFR 778.209(b) (explaining that to calculate the overtime on a bonus, the amount of increased overtime payment "may be determined by dividing the total bonus by the number of hours worked by the employee during the period for which it is paid, [then] multiplying by the total number of statutory overtime hours worked . . by one half this hourly increase."); DLSE Manual § 49.2.4 ("Since the bonus was earned during straight time as well as overtime hours, the overtime 'premium' on the bonus is half-time . . . on the regular bonus rate. The regular bonus rate is found by dividing the bonus by the total hours worked during the period to which the bonus applies.").

Here, the STI Plan paid both the bonus and the overtime on the bonus simultaneously. Since the STI bonus was, *by agreement*, a percentage of hourly earnings *that did not include the value of points or employee discounts*, the overtime owed on the STI bonus *likewise did not include the value of points of employee discounts*. Harris cannot dispute the fact that, by agreement, the non-overtime component of her bonus was calculated on Eligible Earnings that excluded the value of points and employee discounts. In her interrogatory responses, however, Harris asserts that somehow, contrary to the STI Plan, the STI calculation should have included the value of points received. But there was no agreement to include the value of points in her STI bonus, so her assertion is baseless. For the same reasons, the overtime component of her STI bonus calculation did not need to include any overtime

paid on the points or employee discounts, and any arguments to the contrary are nonsensical.

Hypothetical examples reveal this fundamental reality, as well as the misguided nature of any argument that STI bonus calculations should have included overtime based on taxable income from points or discounted services received.  Assume that, in a given fiscal month, an employee earns $13 per hour and works 130 hours, 10 of which are overtime hours.  During that month, the employee has taxable income on discounted purchases of $50, grossed-up income on points received of $15, and overtime on points received of $1.   Non-overtime Eligible Earnings for the month equal $1,690 ($13 per hour * 130 hours), and overtime on hourly earnings equals $65 (10 hours * 0.5 * $13 per hour).  The *non-overtime* component of the STI incentive is 10% of non-overtime Eligible Earnings, which equals $169 (10% * $1,690).  Thus, the overtime owed on the non-overtime component of the STI incentive is $169, divided by 130 total hours worked, multiplied by 10 overtime hours, multiplied by 0.5—or $6.50 ($169/130 * 10 * 0.5).  Put otherwise, the total amount for the fiscal month is as follows:

| Earnings | Amount | Calculation |
|---|---|---|
| Hourly Earnings | $1,690 | 130 hours * $13.00 per hour |
| Overtime on Hourly Earnings | $65 | 10 hours * $6.50 per hour overtime premium |
| Total Hourly Earnings | $1,755 | $1,690 + $65 |
| Value of Employee Discount | $50 | |
| Grossed Up Value of Points | $15 | |
| Overtime on Value of Points | $1.00 | |
| STI Incentive | $169 | $1,690 straight time hourly earnings * 10% |
| OT on STI Incentive | $6.50 | $169/130 hours * 10 OT hours * 0.5 |
| TOTAL Pay for Fiscal Month | $1,996.50 | |

Rather than calculating the STI bonus and the overtime premium on the STI bonus separately, the employer may simultaneously calculate both the STI bonus and the overtime owed on the STI bonus by paying 10% of Eligible Earnings plus 10% of the overtime on the Eligible Earnings:

| Earnings | Amount | Calculation |
|---|---|---|
| Hourly Earnings for Non-OT Hours | $1,560 | 120 hours * $13.00 per hour |
| Hourly Earnings for OT Hours | $195.00 | 10 hours * $19.50 per overtime hour |
| Total Hourly Earnings | $1,755 | $1,560 + $195.00 |
| Value of Employee Discount | $50 | |
| Grossed Up Value of Points | $15 | |
| Overtime on Value of Points | $1.00 | |
| STI Incentive | $175.50 | Total Hourly Earnings * 10% |
| | | |
| TOTAL Pay for Fiscal Month | $1,996.50 | |

Thus, in calculating overtime on a bonus that is a percentage of Eligible Earnings, only the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

overtime attributable to those same Eligible Earnings are included in the bonus's overtime calculations. Here, because the Eligible Earnings on which the STI bonus was paid did not include the value of points and employee discounts, the overtime calculation for the STI bonus similarly did not need to include any overtime based on employee points or discounts.  In sum, BB properly paid all overtime owed on the STI bonus.

### 4.     BB Properly Paid Harris Overtime on Her Points

BB did properly paid Harris overtime on the points that she received.  As referenced above, there was only one work week (July 20 to July 26, 2014) in which Harris earned points *and* worked overtime. And, for that week, BB properly calculated the $0.02 in overtime due to Harris by (1) calculating the rate at which Harris earned the points ($0.44 in points value per hour), (2) multiplying that rate by 1.5 to determine the overtime rate for the points ($0.66 in points value per hour), and (3) multiplying the overtime rate by the overtime hours that Harris worked that week (.03).  (Nelson Decl., Ex. A; Kropp Decl., Ex. A; Knapp Decl. ¶ 8; Harris Dep. at 109:2-5; 140:7-11.)  BB paid Harris all of the overtime to which she was entitled for her points.  *See, e.g.*, 29 U.S.C. § 207 (overtime work shall be compensated at "a rate not less than one and one-half times the regular rate"); Cal. Lab. Code §510 (same).[4]

### 5.     BB Was Not Required to Pay Harris Additional Overtime for Her Participation in the Employee Discount Program

Harris wrongly asserts that she should have received overtime based on her discounted purchases of BB services.  The DOL, however, has made clear that "discounts on merchandise offered by many retail establishments to their employees [are items] which the [DOL] *do[es] not regard as wages*"—meaning the discounts have no impact whatsoever on an employee's overtime wages.  DOL Opinion Letter, 1962 DOLWH LEXIS 217, *2 (Oct. 31, 1962) (emphasis added).

In addition to contravening the DOL's position on the matter, Harris's claim also contravenes both applicable regulations and case law.  First, the FLSA expressly excludes from regular rate calculations "sums paid . . . as a reward for service, the amounts of which are not measured by or dependent on hours worked, production, or efficiency."  29 U.S.C. § 207(e)(1).  Federal regulations

---

[4] Additionally, it is noteworthy that the DLSE Manual sets forth two calculations for overtime rates on bonuses, distinguishing between a "formula" bonus (dividing by total hours worked and multiplying by 0.5) and a "flat" bonus (dividing by straight time hours worked and multiplying by 1.5).  *See* § 49.2.4.  In an abundance of caution, BB used the more conservative flat approach.  In *Alvarado v. Dart Container Corp. of Cal.*, 243 Cal. App. 4th 1200 (2016), the court approved the formula approach for all bonuses.  Thus, Harris and all other California BB employees were actually overpaid overtime on their points awards.

interpreting this provision further specify that "[t]o qualify for exclusion under section 7(e)(1), the bonus must be actually a gift *or in the nature of a gift*," meaning that the payment is not "geared to wages" and not "measured by hours worked, production, or efficiency." 29 C.F.R. § 778.212(b) (emphasis added).  The DLSE has reached the same conclusion under California law.  *See* DLSE Manual § 49.1.2 .4(1) (excluding from regular rate calculations "payments in the nature of gifts . . . the amounts of which are not measured by or dependent on hours worked, production, or efficiency").  Here, BB's employee discount program was available to Harris *independent* of her hours worked, production, performance, or efficiency.  (Poth Decl. ¶ 3, Ex. A.)  Thus, the employee discount was "in the nature of a gift" and was not "geared to wages," meaning it did not affect Harris's regular rate and therefore did not entitle her to additional overtime wages.

The court in *Rau v. Darling's Drug Store, Inc*., 388 F. Supp. 877 (W.D. Pa. 1975), addressed a similar scenario.  There, the employee received "an unlimited merchandise discount of 40% [and] a 50% [d]iscount on all of her meals."  *Id*. at 885.  In addressing the employee's unpaid-overtime claim, the court ultimately held that such discounts "were in the nature of gifts and not based upon the number of hours worked"; in other words, they were "not in the nature of compensation such as would [be] included in the determination of the 'regular rate.'"  *Id*. at 879.  More recently, in *Rodriguez v. Taco Bell Corp*., 2013 WL 5877788 (E.D. Cal. Oct. 30, 2013), the Eastern District of California analyzed a motion to dismiss a claim that a defendant "incorrectly calculated overtime wage rates" in violation of the California Labor Code because "the overtime rate failed to take into account the meal and drink discounts provided by [d]efendant."  *Id*. at *4.  Noting that California law is consistent with federal law in calculating the regular rate of pay for overtime purposes, *id.* at *4 (citations omitted), the court evaluated Section 207(e)(1) and discussed *Rau* approvingly.  Ultimately, although the court endorsed the holding in *Rau*, it could not determine at the motion-to-dismiss stage whether the discounted meal policy at issue in that case was "measured by or dependent on hours worked, production, or efficiency." *Id*. at *5 (quoting 29 U.S.C. § 207(e)(1)).  Here, as referenced above, Harris's participation in BB's employee discount program was not dependent on her hours worked, production, or efficiency.  Thus, per the above standards, she was not entitled to any additional overtime compensation based on her participation in the program.

Finally, Harris's claim for overtime on employee discounts must fail because services provided

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

to an employee at no cost to the employer are not included in that employee's regular rate calculations. Indeed, federal regulations specify that "[w]here payments are made to employees in the form of goods or facilities which are regarded as part of wages," those payments are included in the regular rate *only* to the extent of "the ***reasonable cost*** to the employer or the fair value of such goods or of furnishing such facilities." 29 C.F.R. § 778.116 (emphasis added). "Reasonable cost," as used in the FLSA, has been "determined to be ***not more than the actual cost to the employer*** of the board, lodging, or other facilities customarily furnished by him to his employees," and the "[r]easonable cost does ***not include a profit to the employer*** or to any affiliated person." *See* 29 C.F.R. § 531.3(a) and (b) (emphases added).[5] As the *Rodriguez* court noted, "if the 'reasonable cost' or 'fair value' of the employee discount is zero, [the employee's] regular rate was calculated correctly and [the employee] suffered no underpayment in overtime." *Rodriguez*, 2014 WL 5426733, at *5 (E.D. Cal. Oct. 23, 2014). This occurs if, for instance, the employer's "cost to produce discounted [items] is equal to or less than [the discounted price to the employee], meaning [the employer] breaks even or makes a small[] profit." *Id*. That is exactly what happened here—***Harris paid at least 5% above BB's cost*** for all of the products and services that she purchased from BB. (Poth Decl. ¶ 10, Ex. A.) In other words, BB either broke even or profited from all of Harris's purchases. Consequently, Harris's claim fails because "the net cost to [the employer was not] greater than zero." *Rodriguez*, 2014 WL 5426733, at *5.

**B.     Harris's Second Cause of Action for Untimely Payment of Her STI Bonuses and Overtime on Points Fails As a Matter of Law**

Harris's Second Cause of Action seemingly asserts that BB violated Section 204 because it failed to timely pay her STI bonuses and overtime on points. (*See* Compl. ¶ 30.)[6] This claim, however, fails for two independent reasons. First, only the Labor Commissioner (or a person acting in the name of the Labor Commissioner) can bring a claim for violation of Section 204; no private right of action exists. Second, even if a private right of action did exist (which it does not), BB paid Harris in accordance with the law.

---

[5] The DLSE has similarly concluded that, with respect to meal and lodging credits (that is, credits that employers may use to offset certain of employees' minimum wages), the value of the credit is the "actual cost" to the employer. DLSE Manual § 45.4.2.

[6] To the extent that Harris implicitly alleges that Best Buy failed to timely pay overtime wages related to her employee discount, that assertion is legally irrelevant because she was never entitled to such overtime wages, as explained in Section IV.A.5.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

15

DEFENDANT BEST BUY STORES, L.P.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OF
PLAINTIFF STARVONA HARRIS'S CLAIMS

1

### 1.     No Private Right of Action Exists for a Section 204 Violation

2      Section 204 creates certain timing requirements with respect to payment of regular wages.

3   Labor Code Section 210 imposes various civil penalties for a violation of Section 204.  But a claim for

4   Section 210 penalties must "be brought in the name of the people of the State of California and the

5   Labor Commissioner." Cal. Lab. Code § 210(b).  Harris does not make such a claim.  And she cannot

6   bring a private action for violation of Section 204.  The "[a]doption of a regulatory scheme does not

7   automatically create a private right to sue for damages resulting from violations of the statute." *Vicko*

8   *Ins. Serv. Inc. v. Ohio Indem. Co.*, 70 Cal. App. 4th 55, 62-63 (1999).  Rather, "a private right of action

9   exists only if the language of the statute or its legislative history clearly indicates that the Legislature

10  intended to create such a right to sue for damages.  If the Legislature intends to create a private cause of

11  action, [California courts] generally assume it will do so directly in clear understandable, unmistakable

12  terms." *Id.*; *see also Noe v. Superior Court*, 237 Cal. App. 4th 316, 335-37 (2015).

13     The Legislature did not intend to create a private right of action under Section 204; Section 210,

14  in fact, specifically disavows a private right of action.  When the Legislature has intended to create a

15  private right of action, it has done so in clear and unmistakable language.  *Compare* Cal. Lab. Code §

16  204 *with id.* § 1194 (stating that "any employee receiving less than minimum wage or the legal

17  overtime compensation . . . is entitled to recover in a civil action the unpaid balance").  In short, Section

18  204's comprehensive administrative scheme, together with the absence of reference to a private right of

19  action, evince that the Legislature did not intend to create a private right of action.  *See, e.g.*, *Slay v.*

20  *CVS Caremark Corp.*, 2015 WL 2081642, at *8 (E.D. Cal. May 4, 2015) ("Section 204 does not

21  provide a private right of action."); *Unger v. Fed. Nat'l Mortgage Ass'n, Inc.*, 2015 WL 4366319, at *2

22  (C.D. Cal. July 16, 2015) (finding that no private right of action exists under Section 204); *Villalpando*

23  *v. Exel Direct Inc.,* 2014 WL 1338297, at *18 (N.D. Cal. Mar. 28, 2014) (same); *Jeske v. Maxim*

24  *Healthcare Servs., Inc.*, 2012 WL 78242, at *5 (E.D. Cal. Jan. 10, 2012) (same); *Johnson v. Hewlett-*

25  *Packard Co.*, 809 F. Supp. 2d 1114, 1136 (N.D. Cal. 2011) (same); *Caliber Bodyworks, Inc. v. Sup. Ct.*,

26  134 Cal. App. 4th 365, 379 (2005) (same).  Thus, because there is no private right of action for alleged

27  Section 204 violations, Harris's individual claim under Section 204 must be dismissed.

### 2.     BB Timely Paid Harris in Any Event

28     Even if Harris could bring a private right of action for Section 204 violations (which she

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

16

DEFENDANT BEST BUY STORES, L.P.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OF
PLAINTIFF STARVONA HARRIS'S CLAIMS

1    cannot), BB timely paid her STI payments and overtime on points.  Regarding her STI payments, the

2    law is clear that if a bonus is calculated on a monthly or quarterly basis, then the bonus need not be paid

3    until the regular payday following the date on which the bonus is calculated.  DLSE Manual § 5.2.4

4    (citing DLSE Opinion Letter 1986.12.23).

5            Here, as discussed above, BB could not calculate the monthly STI payment at the end of the

6    fiscal month.  Rather, it had to allow returns, exchanges, and the like to occur so that they could be

7    properly attributed to that fiscal month.  Once BB closed its books on a particular fiscal month, it then

8    had to compile all of the information necessary to determine each store's Store All Channel Revenue

9    and calculate the Store All Channel Revenue for each retail location across the country.  Once these

10    numbers were final and audited, each store was assigned a score based upon the calculated metrics

11    pursuant to the Plan.  Those metrics were then applied to finalize Eligible Earnings for the fiscal month

12    for each employee.  This detailed and painstaking process could not be completed instantaneously; the

13    process required a minimum of about two weeks.  And, as soon as BB could finalize its calculations, it

14    paid Harris's STI payments in her very next paycheck.  Accordingly, any timing claim based upon

15    Harris's STI payments fails.

16            Similarly, with respect to the payment of overtime on Harris's points, there was only one work

17    week (July 20 to July 26, 2014) in which Harris earned points *and* worked overtime.  And, as shown in

18    Section II.D, BB paid her the $0.02 in additional overtime due to her in that exact same pay period that

19    she received the points award.

## C.    Harris's Third Claim for Relief for Failure to Pay All Wages Owed Upon Termination Fails Because a Good-Faith Dispute Exists

20            In her Third Cause of Action, Harris seeks waiting-time penalties under Section 203 as a result

21    of BB's purported failure to pay all of her overtime wages upon her resignation.  (Compl. ¶¶ 34-35.)[7]

22    Because this claim is derivative of her underlying overtime claims, it should be dismissed for the same

23    reasons discussed above.  Regardless, Harris's claim for waiting-time penalties nevertheless fails

24    because there is a good-faith dispute regarding Harris's claims.

---

[7] Harris claims that Best Buy "did not pay her final wages until September 16, 2014."  (Compl. ¶ 20.)
In fact, Best Buy paid Harris on September, 15, 2014 (Jarrett Decl., Ex. C at 12:4-9), a mere three
days after Harris resigned by walking off the job (*see* Harris Dep. 27:22-24, 245:11-18; Jarrett Decl.,
Ex. C at 14:7-15:5).  Section 202(a) gives up to three days to pay employees after they resign, so
Harris has no claim for untimely payment of her final paycheck.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

To award waiting-time penalties under Section 203, the Court must find that BB "willfully" failed to pay Harris wages upon her separation from employment:

> If an employer *willfully* fails to pay, without abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 202 and 202.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefore is commenced; but the wages shall not continue for more than thirty days.

Cal. Lab. Code § 203(a) (emphasis added).  An employer cannot "willfully" fail to pay wages when there is a "good faith dispute" about those wages.  *See* Cal. Code Regs. tit. 8, § 13520; *see also Smith v. Rae-Venter Law Gr.,* 29 Cal. 4th 345, 354, nn.3-4 (2002) (holding that good-faith dispute negated claim for waiting-time penalties), *superseded by statute on other grounds as stated in Sampson v. Parking Service 2000 Com, Inc.*, 117 Cal. App. 4th 212, 220 n.8 (2004); *Armenta v. Osmose, Inc.*, 135 Cal. App. 4th 314, 325 (2005) ("A good faith belief in a legal defense will preclude a finding of willfulness."); *Nordstrom Comm'n Cases*, 186 Cal. App. 4th 576, 584 (2010) ("There is no willful failure to pay wages if the employer and employee have a good faith dispute as to whether and when the wages were due.").  A "good faith dispute" occurs when "an employer presents a defense, based in law or fact which, if successful, would preclude any recovery on the part of the employee."  Cal. Code Regs. tit. 8, § 13520.  Whether the defense ultimately is successful is inconsequential.  *Id.*

Where the law governing wage payments is unclear, such that the employer's understanding of the legal requirements, even if mistaken, has a good faith basis, a failure to pay earlier is not "willful." *See Barnhill v. Robert Saunders & Co.*, 125 Cal. App. 3d 1, 8 (1981) (holding that a failure to pay wages is not willful when a good-faith dispute exists as to whether the wages are owed); *Amaral v. Cintas Corp.*, 163 Cal. App. 4th 1157, 1201-03 (2008) (no "willful" violation where employer's position raised "complicated issues of first impression"); *Harris v. Vector Mktg. Corp.*, 656 F. Supp. 2d 1128, 1146-47 (N.D. Cal. 2009) (granting summary judgment on Section 203 claim where good-faith dispute existed as to whether plaintiff was an employee); *Campbell v. PricewaterhouseCoopers, LLP*, 602 F. Supp. 2d 1163, 1185 (E.D. Cal. 2009).   For instance, in *Alonzo v. Maximus, Inc.*, 832 F. Supp. 2d 1122 (C.D. Cal. 2011), the court ultimately found that even though a particular bonus was non-discretionary and thus should have been included in the regular rate of pay, there was still a good-faith dispute as to whether the employer was justified in believing it could exclude the bonus from the

Morgan, Lewis &
Bockius LLP
Attorneys at Law
Costa Mesa

18
DEFENDANT BEST BUY STORES, L.P.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OF
PLAINTIFF STARVONA HARRIS'S CLAIMS

regular rate calculation.  Because the employer had a good-faith basis for excluding the bonus, the court granted the employer's motion for summary judgment on the plaintiff's waiting-time-penalties claim even though it determined that the underlying bonus was non-discretionary.  *See id.* at \*30-\*31 ("Though Defendant's arguments did not ultimately carry the day under the law as found by this Court, Defendant nonetheless presented good faith defenses . . . that . . . were not unsupported by any evidence, were not unreasonable, and were not presented in bad faith.").

Here, as in *Alonzo*, a "good faith dispute" clearly exists, barring Harris's claim for waiting-time penalties.  Indeed, as discussed above in Section IV.A, the statutes, regulations, and cases that govern the calculation of an employee's regular rate of pay provide that no additional overtime is owed on percentage bonus payments like the monthly STI payment received by Harris.  No California court has ever found that additional overtime is owed on percentage bonus payments, nor is there any authority that would suggest otherwise.  The law is likewise clear that BB fully satisfied its obligations to pay Harris overtime for the points she received, and BB was not required to pay Harris any overtime for any merchandise she received.  Any alleged failure to pay Harris such overtime wages was therefore not "willful" under Section 203, and Harris's claim for waiting-time penalties fails as a matter of law.

### D. Harris's Fourth Claim for Relief for Failure to Provide Accurate Wage Statements Fails for Multiple Reasons

Harris claims BB violated Section 226 because (1) the wage statements she received during her employment did not reflect allegedly unpaid overtime, (2) certain wage statements reflect hours from a previous period, and (3) the wage statements "do not list the total hours worked for any period." (Compl. ¶ 19.)  All of these assertions are either legally irrelevant or factually baseless.

Section 226(a) sets forth categories of information required to be shown in wage statements. Section 226(e) provides as follows:

> [A]n employee suffering injury *as a result of a knowing and intentional failure by an employer* to comply with subdivision (a) is entitled to recover . . .

Cal. Lab. Code § 226(e) (emphasis added).  Accordingly, to prevail on her wage statement claim for penalties under Section 226(e), Harris must prove the following:  (1) each of her wage statements violates Section 226(a), (2) Harris suffered an injury as a result of the non-compliance, and (3) BB's failure to comply with Section 226(a) was knowing and intentional.  If Harris seeks to recover actual damages instead of penalties, she must prove her actual damages.  The uncontroverted facts establish

that Harris can prove none of the above.

As a preliminary matter, Harris's overtime argument is wholly derivative of her underlying overtime claims, and therefore fails for the same reasons. It additionally fails because BB had a good-faith belief regarding the lawfulness of not paying her the disputed overtime, meaning that alleged "omissions" of wages earned cannot be deemed "inaccuracies" at all, let alone "knowing and intentional" violations. *See, e.g., Dalton v. Lee Publ'ns, Inc.*, 2011 U.S. Dist. LEXIS 29835, at *16 (S.D. Cal. 2011) ("A 'good faith dispute' as to whether Plaintiff is subject to these provisions precludes a finding that Defendant acted with requisite scienter."); *Harris*, 656 F. Supp. 2d at 1145-46 (summary adjudication warranted on Section 226(e) claim where dispute existed as to whether plaintiff was independent contractor or employee and record lacked evidence that conduct was knowing or willful).

Harris's argument that three of her wage statements reflect hours worked in the preceding pay periods likewise does not establish a violation of Section 226. To be sure, although three of Harris's wage statements do reflect hours from a "previous period," this happened as a result of Harris's failures to accurately record her time and her belated edits to her records. (Kropp Decl. ¶ 4, Exs. A, B; Nelson Decl., Ex. A; Jarrett Decl., Ex. D at 31:16-49:25.) And her failures to properly clock in cannot constitute "a knowing and intentional" violation of Section 226 by BB.[8]

Additionally, even ignoring these facts, Section 226 does ***not*** create a penalty for non-payment or late payment of wages. The right to receive payment of wages at certain intervals is governed by Sections 201, 202, and 204. Section 226(a), in contrast, requires that employers accurately describe the monies that are being paid "***at the time of each payment of wages***." (Emphasis added). Harris has no claim under Section 226 based on a wage statement's alleged failure to describe money that was ***not*** being paid. *See* DLSE Opinion Letter 2006.07.06, at 2 (stating that the purpose of Section 226 "is to provide transparency as to the calculation of wages" and "to allow employees to maintain their own records of wages earned, deductions, and pay received"). Indeed, Section 226(e)(2) specifies that an employee does not "suffer injury" unless the employee cannot determine, among other things, the

---

[8] Moreover, because Harris edited her time either at the end or after the end of the pay periods in which she worked, her managers could not always approve her edits before her time records were sent to payroll. And, even assuming arguendo that a supervisor could have theoretically approved certain of her edits on the same day that she entered them, such "isolated and unintentional" occurrences were "due to a clerical or inadvertent mistake[s]," meaning they were not a "knowing and intentional failure[s]" to comply with Section 226. Lab. Code § 226(e)(3).

wages "**paid** to the employee **during the pay period**," and "[w]hich deductions the employer made . . . **during the pay period**." (Emphases added).

Here, there is no evidence that Harris's wage statements failed to accurately display information regarding what BB paid Harris during each relevant pay period, meaning that she has no claim and suffered no injury under Section 226. First, the hours Harris worked can be totaled by simply adding the "hours" column in her wage statements, which complies with Section 226(a)(2). *See Morgan v. United Retail, Inc.*, 186 Cal. App. 4th 1136, 1149 (2010).[9] Harris's statements display all deductions in compliance with Section 226(a)(4). In conformity with Section 226(a)(6), the statements display the beginning and end of the pay period and the pay date. The statements comply with Section 226(a)(7) and (8) by displaying Harris's unique ID and BB's name and address. And the statements display all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate in accordance with Section 226(a)(9). (Nelson Decl., Ex. A.)

**E.      Harris's Fifth Claim for Relief for Failure to Reimburse Business Expenses Fails Because the Expenses at Issue Were Not Necessary or Reasonable**

Harris's Fifth Claim for Relief alleges that BB violated Section 2802 by failing to reimburse her for business expenses related to personal cell phone usage. (Compl. ¶¶ 42-44.) Section 2802 provides that employers must indemnify an employee for "all **necessary** expenditures or losses incurred by the employee **in direct consequence** of the discharge of his or her duties." Cal. Lab. Code § 2802(a) (emphasis added). Section 2802 further dictates that "necessary expenditures" must be "reasonable." *Id.* § 2802(c). Determining whether an expense was "necessary" requires inquiry into what was reasonable under the circumstances. *Gattuso v. Harte-Hanks Shoppers, Inc.*, 42 Cal. 4th 554, 568 (2007); *Grissom v. Vons Co.*, 1 Cal. App. 4th 52, 58 (1991). In *Gattuso*, the California Supreme Court recognized that the employer may "consider not only the actual expenses that the employee incurred, but also whether each of those expenses was 'necessary,' which in turn depends on the reasonableness of the employee's choices." *Gattuso*, 42 Cal. 4th at 568; *see also Novak v. Boeing Co.*, 2011 U.S. Dist. LEXIS 83031, at *9 (C.D. Cal. 2011) (holding that home phone and internet expenses of employees who participate in a voluntary program allowing them to work from home instead of the office do not

---

[9] Although Harris alleges in conclusory fashion that the wage statements "do not list the total hours worked for any period" (Compl. ¶ 19), this flatly contradicts her deposition testimony. Harris Dep. 109:6-110:17; 113:6-11; 115:4:-116:18, 122:24-124:4, 124:5-24, 126:10-127:16, 128:11-129:8.

DEFENDANT BEST BUY STORES, L.P.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OF
PLAINTIFF STARVONA HARRIS'S CLAIMS

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

incur "necessary expenditures"; rather, the court deemed those "optional expenses" accepted by employees who apply to work from home, receive approval, choose to work from home, and thus potentially incur additional phone and internet expenses that would have been paid for by the employer if the employees were working at the employer's office).

Here, Harris seeks reimbursement of limited personal cell phone usage. Under applicable law, however, Harris is not entitled to reimbursement for the use of her personal cell phone because such usage was not reasonable or necessary for Harris to perform her job. Harris chose to use her personal cell phone, despite the existence of over thirty company phones for employee use at her store. (McKeon Decl. ¶ 5.) Moreover, her store had free WiFi, and her use of her personal cell phone was not necessary. BB is entitled to summary judgment as to Harris's Section 2802 claim with respect to any cell-phone-related expenses.[10]

### F.   Harris's Sixth Claim for Relief for Unfair Competition Should Be Dismissed

Harris's unfair competition law ("UCL") claim derives from her underlying overtime and expense claims. Because all of these underlying claims fail as a matter of law, however, Harris's derivative UCL claim must likewise fail. *See, e.g., Prachasaisoradej v. Ralph's Grocery Co.*, 42 Cal. 4th 217, 244 (2007) (holding that derivative UCL claim fails with underlying claim); *Rubin v. Wal-Mart Stores, Inc.*, 599 F. Supp. 2d 1176, 1179 (N.D. Cal. 2009) (holding that where claims for violations of the California Labor Code failed, derivative claim for unfair competition also failed).

Moreover, Harris seeks to recover penalties for purported Labor Code violations via her UCL claim—which she cannot do. Courts have repeatedly held that the UCL limits a private plaintiff's remedies to restitution and injunctive relief. *See, e.g., Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163 (2000); *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003). In addition, the California Supreme Court has repeatedly held that the right to a penalty does not vest until it has been enforced. *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1108 (2007); *People v. Durbin*, 64 Cal. 2d 474, 479 (1966) ("No person has a vested right in an unenforced penalty . . . ."). Other courts have specifically rejected attempts to recover Labor Code penalties via UCL claims. *See, e.g., Tomlinson v. IndyMac Bank F.S.B.*, 359 F. Supp. 2d 891, 895 (C.D. Cal. 2005) (holding that

---

[10] Harris never submitted reimbursement for any business-related telephone calls, despite Best Buy's policy indicating that such expenses were reimbursable. (Grate Decl. ¶ 5, Ex. A, p. 5.)

Section 203 provides for a penalty, not wages, which cannot be raised through a UCL claim); *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 619 (N.D. Cal. 2007) (dismissing of UCL claims based on Sections 203 and 226); *Murphy*, 40 Cal. 4th at 1108-09 (stating that Section 203 is a penalty statute).

Similarly, Harris cannot recover business expenses via her UCL claim, because business expenses are not wages and thus cannot be restituted.  *See, e.g.,* DLSE Manual § 4.3.4, at 4-3 ("'Any wages' includes any amount due as wages . . . but does not include expenses."); *Nelson v. Dollar Tree Stores, Inc.*, 2011 U.S. Dist. LEXIS 90531, at *8-10 (E.D. Cal. 2011) (holding that reimbursement for business expenses does not constitute "wages" under California law); *Gattuso*, 42 Cal. 4th at 572 (stating that "Section 200 highlights a valid and important distinction between wages and business expense reimbursement" and that "wages and expense reimbursement are conceptually distinct and subject to different statutory and sometimes also contractual restraints").

### G.   Harris's Seventh Claim for Relief Fails Because BB Complied With Its Record-Production Obligations

Harris seeks a $750 penalty for BB's alleged failure to produce her personnel and payroll records in violation of Labor Code Sections 226, 432, and 1198.5.  The only documents that Harris specifically alleges were not timely produced are "a letter terminating [Harris's] employment, wage statements, and timesheets."  (Compl. ¶ 21.)  Harris does not dispute that BB has produced these records to her; rather, she believes they were not produced quickly enough after her attorney allegedly requested them on November 28, 2014.  (*Id.*)  As a threshold matter, however, her claim fails because Sections 226, 432, and 1198 did not require BB to produce the documents at issue.

Section 226(a) requires that employers maintain copies of either an "itemized statement" or a "computer-generated record that accurately shows," among other things, employees' hours and wages. Section 226(c), in turn, requires that employers allow "current or former employee[s]" to "copy or inspect" such records.  BB did exactly that when it produced payroll register records to Harris's attorney in December 2014.  Jarrett Decl., Ex. G at 14-30.  Her claim under Section 226 fails.

Section 432 requires that employers allow "employee[s] or applicant[s]" to obtain certain signed employment documents upon request.  Section 432, however, does ***not*** provide rights to ***former*** employees—unlike Sections 226(c) (allowing "former employee[s]" to inspect records) and 1198.5 (also allowing "former employee[s]" to inspect records).  It is a "fundamental principle[] of statutory

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

23

DEFENDANT BEST BUY STORES, L.P.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OF
PLAINTIFF STARVONA HARRIS'S CLAIMS

construction that "[w]here different words or phrases are used in the same connection in different parts of a statute, it is presumed the Legislature intended a different meaning." *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal. 4th 1106, 1117, 969 P.2d 564 (1999) (citation omitted); *see also Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253-54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." (citations omitted)); *Arizona Elec. Power Co-op., Inc. v. United States*, 816 F.2d 1366, 1375 (9th Cir. 1987) ("When Congress includes a specific term in one section of a statute but omits it in another section of the same Act, it should not be implied where it is excluded." (citation omitted)). Here, unlike Sections 226(c) and 1198.5, the California Legislature never wrote Section 432 to encompass "former" employees. And it is undisputed that Harris was a former employee at the time her attorney requested records from BB. She therefore has no claim under Section 432.[11]

Finally, Section 1198.5 requires employers to allow "current and former employee[s]" to inspect personnel files concerning "the employee's performance or to any grievance concerning the employee." Harris seemingly believes that the letter confirming the end of her employment as of September 13, 2014 related to her "performance." But that letter says ***nothing*** about Harris's performance (which is not surprising, given that Harris resigned); instead, the letter merely recites that she had already been paid her final paycheck. Jarrett, Decl., Ex. F. Thus, BB provided Harris with all of the documents to which she was entitled under Section 1198.5.

## H. Harris's Eighth Claim for Relief for PAGA Penalties Should Be Dismissed As Derivative

Harris's PAGA claim depends entirely on a finding that BB violated the Labor Code. Because Harris's PAGA claim is entirely dependent on her other untenable claims, BB is entitled to summary judgment on this claim as well. *See, e.g.,* Cal. Lab. Code § 2699(a), (c) (providing that only an "aggrieved employee" may bring a claim under PAGA).

Moreover, Harris cannot bring a claim under PAGA for BB's purported failure to produce personnel and payroll records because Harris never gave the California Labor and Workforce Development Agency ("LWDA") the requisite opportunity to investigate these allegations before she

---

[11] Moreover, even if Harris were a current employee when she requested records, she nevertheless would have no claim under Section 432 because there is no private right of action for violations of Section 432. *See Vicko*, 70 Cal. App. 4th at 62-63; *Noe*, 237 Cal. App. 4th at 335-37.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

1  brought this suit.  The Labor Code is clear that an employee can bring a civil action "only after" giving

2  "written notice . . . to the [LWDA] and the employer of the specific provisions of this code alleged to

3  have been violated, including the facts and theories to support the alleged violation."  § 2699.3(a).

4  And, although Harris notified the LWDA about BB's various other purported violations of the Labor

5  Code, she never once mentioned the alleged failure to produce records.  (Jarrett Decl., Ex. E.)   She

6  therefore cannot bring these claims under PAGA.

7  **V.**      **CONCLUSION**

8           For all of the foregoing reasons, BB respectfully requests that this Court grant its motion for

9  summary judgment or, in the alternative, motion for partial summary judgment of Harris's claims.

10  Dated: February 18, 2016                              MORGAN, LEWIS & BOCKIUS LLP

11                                                            By    /s/ Barbara J. Miller
                                                              BARBARA J. MILLER
12                                                            BRYAN L. JARRETT
                                                              Attorneys for Defendant
13                                                            BEST BUY STORES, L.P.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

25
DEFENDANT BEST BUY STORES, L.P.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OF
PLAINTIFF STARVONA HARRIS'S CLAIMS