UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STARVONA HARRIS,<br><br>    Plaintiff,<br><br>  v.<br><br>BEST BUY STORES, L.P.,<br><br>    Defendant. | Case No. 15-cv-00657-HSG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; SETTING CASE MANAGEMENT CONFERENCE**<br><br>Re: Dkt. No. 64 |

Pending before the Court is Defendant Best Buy Stores, L.P.'s motion for summary judgment. Dkt. No. 64. Plaintiff Starvona Harris filed this collective action on February 11, 2015, alleging eight causes of action for violations of state and federal labor code provisions. Plaintiff was a Best Buy employee from October 2013 to September 2014, and she contends that Defendant failed to properly calculate overtime wages, timely pay wages, provide accurate wage statements, reimburse business expenses, and satisfy record-production obligations. The pending summary judgment motion relates only to Plaintiff's individual claims.

After reviewing the materials submitted by the parties, hearing oral argument, and considering the issues raised in both, the Court GRANTS IN PART and DENIES IN PART Defendant's motion.

**I.    FACTS**

The basic facts are not in dispute. In addition to hourly wages, Defendant offers employees in Plaintiff's position three other types of payment: (1) a short-term incentive ("STI") program that is tied to an individual and store's performance, (2) the Path to Excellence ("PTE") Program, which gives employees points based on their performance, and (3) an employee discount program that gives employees discounts on products and services in the store.

### A.  Short-Term Incentive

The parties do not dispute that the STI was a nondiscretionary bonus.  *See* March 24, 2015 recording of oral argument; *see also* Dkt. No. 64 at 9-12; Dkt. No. 66 at 12.  The STI program was tied to individual, store, and company performance.  *See* Dkt. No. 64-9, Ex. A at 1.  Defendant used the following formula to calculate a store associate's STI bonus:

= (Store Associate's Monthly Eligible Earnings for the Fiscal Month) x (Store All Channel Revenue Incentive Target Percentage) x (Store All Channel Revenue Score[1]).

Dkt. No. 64-9, ¶ 9; Dkt. No. 64-9, Ex. A at 7.  For purposes of the STI program, an employee's monthly eligible earnings included all regular, overtime, holiday, and other paid leave pay, but did not include the value of any discounts or points that employees received through Defendant's employee discount program or the Path to Excellence program.  Dkt. No. 64-9, ¶ 9.  The fiscal year 2015 Store All Channel Revenue Incentive Target was 5% for Plaintiff's position.  Dkt. No. 64-9, Ex. A at 7.

Starting in fiscal year 2015, Plaintiff was eligible for the STI payment that was determined using the above formula, Dkt. No. 64-9, ¶ 6, and she earned the bonus in fiscal months February, March, April, June, and August.  Dkt. No. 64-10 at 11.

### B.  Path to Excellence

The PTE program allows Defendant's managers to "recognize employees by awarding them points that the employees can use to obtain various products, services, or gift cards."  Dkt. No. 64-4, ¶ 3.  Defendant values each point at $0.05 per point.  *Id*. at ¶ 5.

Defendant's vendor provides and administers the PTE program, classifying points as either overtime eligible with the code "Points Rcvd GU" or as not overtime eligible with code "NFLSA GU."  Dkt. No. 64-8, ¶ 6.  If points were coded as "Points Rcvd GU," the vendor also provided the start and end date of the award earnings period.  *Id.* at ¶ 7.  Plaintiff received awards that were overtime eligible on July 6, 2014; July 13, 2014; July 15, 2014; July 25, 2014; August 3, 2014; and August 6, 2014.  *Id.*; Dkt. No. 69-11 at 30.  The only work week that Harris both received an

---

[1] The Store All Channel Revenue Score was the actual All Channel Revenue compared to the store's budgeted All Channel Revenue for that fiscal month.  Dkt. No. 64-9, ¶¶ 6, 9; Dkt. No. 64-9, Ex. A at 4.

award of points and worked overtime was July 20-26, 2014; this was for the pay period ending August 2, 2014, and occurred in the fiscal month of July 2015. Dkt. No. 22-2; Dkt. No. 69-11 at 30.

### C. Employee Discount Policy

The Employee Discount Policy was available to employees after 30 days of continuous employment, and it allowed employees "to purchase most products and services at 5% above cost." Dkt. No. 64-8. The policy further stated that the policy was not a contract and could be changed or varied in Best Buy's sole discretion. Additionally, the policy noted the income tax consequences of the discount program:

> [T]he IRS considers anything greater than a 20% discount to be taxable income. Therefore, you will be taxed on the difference between the 20% off price and the 5% above-cost Employee Discount price. This amount will appear as Merchandise Recvd on your pay statement.

*Id.*

Plaintiff used the discount program a number of times, *see* Dkt. No. 67, ¶ 9; Dkt. No. 69-11 at 31, and specifically contests Defendant's failure to include "Merchandise Recvd" earnings in June and August 2014 in the STI calculation for fiscal months June 2015 and August 2015, as well as Defendant's failure to calculate overtime on the merchandise value. Dkt. No. 68, ¶¶ 5-8.

## II. LEGAL STANDARD

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The Court must view the facts and draw inferences in the manner most favorable to the nonmoving party. *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).

Once the moving party meets its burden, the "adverse party may not rest upon the mere

1  allegations or denials of the adverse party's pleading, but the adverse party's response, by
2  affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a
3  genuine issue for trial. If the adverse party does not so respond, summary judgment, if
4  appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56(e); *see also Anderson*,
5  477 U.S. at 248-49. Furthermore, a party cannot create a genuine issue of material fact simply by
6  making assertions in its legal papers. There must be specific, admissible evidence identifying the
7  basis for the dispute. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*,
8  690 F.2d 1235, 1238 (9th Cir. 1980). The Supreme Court has held that "[t]he mere existence of a
9  scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could
10 reasonably find for [the opposing party]." *Anderson*, 477 U.S. at 252.

## III. DISCUSSION

### A. First and Second Causes of Action: failure to pay overtime wages under Fair Labor Standards Act and under California Labor Code §§ 204, 510, 1198

Defendant seeks summary judgment on Plaintiff's first and second causes of action for unpaid overtime compensation under the Fair Labor Standards Act ("FLSA") and the California Labor Code.

#### 1. Applicable Law

In addressing whether Defendant properly calculated overtime compensation, the Court examines federal and state wage and hour law. While the second cause of action is brought under California law, California courts look to federal labor regulations for guidance in the absence of controlling or conflicting California law. *See Huntington Mem'l Hosp. v. Superior Court*, 131 Cal. App. 4th 893, 903 (2005) ("[E]ven though this case involves California law—the payment of overtime for work in excess of eight hours in one day—and federal law requires overtime pay only for work exceeding 40 hours in one workweek, federal authorities still provide useful guidance in applying state law." (parenthetical omitted)); *see also Marin v. Costco Wholesale Corp.*, 169 Cal. App. 4th 804, 815 (2008), *as modified on denial of reh'g* (Jan. 21, 2009) ("[N]o California court decision, statute, or regulation governs bonus overtime . . . there is no controlling California authority apart from the directive that overtime hours be compensated at a rate of no less than one

4

and one-half times the regular rate of pay.").[2] Accordingly, the Court analyzes the first and second causes of action by looking to federal law.

FLSA requires that employees be compensated for all hours worked in excess of forty hours each workweek at "a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a). An employee's regular rate is "the hourly rate actually paid for the normal, non-overtime workweek," and is "obtained by dividing the weekly wage payable for the working of the scheduled workweek by the number of hours in such scheduled workweek." *149 Madison Ave. Corp. v. Asselta*, 331 U.S. 199, 204, *modified sub nom. 149 Madison Ave. Corp. v. Asselta*, 331 U.S. 795 (1947); *Brennan v. Valley Towing Co.*, 515 F.2d 100, 106 (9th Cir. 1975). The FLSA defines "regular rate" to include "all remuneration for employment paid to, or on behalf of, the employee" unless it falls under one of eight statutory exceptions. 29 U.S.C. § 207(e); *see also* Opinion Letter FLSA, 1997 WL 998000, at *1 ("As a general matter, all remuneration paid to employees except that expressly excluded by the FLSA is included in their total compensation when computing their regular rate for overtime purposes."). "Bonuses which do not qualify for exclusion . . . must be totaled in with other earnings to determine the regular rate on which overtime pay must be based." 29 C.F.R. § 778.208. "When including these bonuses in the regular rate of pay, they must be apportioned back over the workweeks of the period during which they may said to have been earned." Opinion Letter FLSA, 1997 WL 998000, at *1; *see* 29 C.F.R. § 778.209.

Alternatively, an employer can calculate overtime compensation without relying on the regular rate: § 778.210 permits employers to satisfy FLSA's overtime compensation requirements by calculating the bonus as a "percentage of total earnings" by multiplying the employee's pay by the same fixed percentage of both the employee's straight-time earnings and overtime earnings. § 778.210; *see also* Opinion Letter FLSA, 1997 WL 998000, at *1; FLSA 2006-4NA (February

---

[2] Additionally, the California Division of Labor Standards Enforcement ("DLSE") has adopted the Department of Labor regulation in its Enforcement Policies and Interpretation Manual ("DLSE Manual"). *See* DLSE Manual § 49.1.2 ("In determining what payments are to be included in or excluded from the calculation of the regular rate of pay, California law adheres to the standards adopted by the U.S. Department of Labor to the extent that those standards are consistent with California law.").

5

1 17, 2006). Section 778.503 similarly provides that a "bonus based on a percentage of total
2 wages—both straight time and overtime wages—satisfies the Act's overtime requirements, if it is
3 paid unconditionally. Such a bonus increases both straight time and overtime wages by the same
4 percentage, and thereby includes proper overtime compensation as an arithmetic fact." 29 C.F.R.
5 § 778.503. Under §§ 778.210 and 778.503, the lump sum payment is a simultaneous payment of
6 the bonus and overtime compensation on the bonus, satisfying FLSA's overtime requirements.
7 § 778.210; Opinion Letter FLSA, 1997 WL 998000, at *1. Under this provision, recomputation is
8 not needed and the bonus is excluded from the employee's regular rate of pay for overtime
9 purposes. § 778.210; Opinion Letter FLSA, 1997 WL 998000, at *1.

The parties' primary dispute relates to the definition of "total earnings" under § 778.210.
Defendant contends that "total earnings" under the percentage of earnings method only includes
straight-time earnings and overtime earnings. Plaintiff relies on Department of Labor ("DOL")
opinion letters to argue a broader definition of "total earnings." For example, the DOL's February
5, 2001 letter provides:

> [W]here an employer's payments under a bonus plan are based upon a percentage of total earnings of the employee, the payments may be excluded from the regular rate of pay if the conditions prescribed in 29 CFR § 778.210 are met. Under the method of allocation discussed in this section, where a bonus is paid as a production incentive percentage of the *employee's total compensation, including straight time, overtime, bonuses, and commissions*, the overtime pay due under the FLSA is automatically included and no additional computation or payment of overtime is required.

Opinion Letter FLSA, 2001 WL 1558953, at *1 (emphasis added). A September 21, 2004 letter contains similar language:

> Under the method of allocation discussed in this section, where a bonus is paid as a predetermined percentage of *an employee's total compensation, including straight-time, overtime, bonuses, and commissions*, the overtime pay due under the FLSA is automatically included and no additional computation or payment of overtime is required. However, the employer must pay the same percentage of the straight time and overtime earnings.

Opinion Letter FLSA, 2004 WL 3177882, at *1 (emphasis added); *see also* Opinion Letter FLSA, 2006 WL 4512946, at *1.

Although the parties' dispute focuses on the facial differences between § 778.210 and the

6

DOL opinion letters, the Court concludes that the provisions are internally consistent and that a plain reading of both supports Plaintiff's position. To begin with, the Court finds that the regulations and opinion letters treat the terms "total earnings," "total compensation," and "total wages" as synonymous. Although the terms are not expressly defined, the opinion letters and §§ 778.210 and 778.503 use the terms interchangeably. For example, § 778.503 does not differentiate between wages and earnings, using both "percentage of total wages" and "percentage of total earnings" when describing § 778.210. And the letters use "total compensation" and "total earnings" interchangeably in the same paragraph, expressly defining total compensation to include "straight time, overtime, bonuses, and commissions." *See, e.g.*, Opinion Letter FLSA, 2001 WL 1558953; Opinion Letter FLSA, 2004 WL 3177882.

The DOL's treatment of these terms as synonymous informs the Court's analysis. Contrary to Defendant's argument, nothing in the language of § 778.210 defines "total earnings" as limited to straight-time and overtime compensation. In the example described in § 778.210, the employee received only straight-time earnings and overtime earnings, and thus the percentage of "total earnings" was based on the received straight-time and overtime earnings. Moreover, § 778.210 expressly introduces the relevant sentence with "for example" and includes the word "may," thus leaving room for the possibility of additional forms of compensation.[3] Accordingly, the Court finds that §§ 778.210 and 778.503 simply include one example of how an employer can make a simultaneous payment of overtime compensation on a bonus, and that in the opinion letters, the DOL delineates the full scope of the definition of "total earnings."

The Court cannot ignore the plain language of the regulations and opinion letters. *See Imada v. City of Hercules*, 138 F.3d 1294, 1297 (9th Cir. 1998) (holding that DOL's opinion letters are "normally entitled to a high degree of deference"). The Supreme Court has held:

> [T]he rulings, interpretations and opinions of the Administrator under this Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for

---

[3] "*For example*, a contract made prior to the performance of services *may* provide for the payment of additional compensation in the way of a bonus at the rate of 10 percent of the employee's straight-time earnings, and 10 percent of his overtime earnings." § 778.210 (emphases added).

> guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.

*Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). The Court must give deference to the DOL's interpretation of its regulations, *Webster v. Pub. Sch. Employees of Washington, Inc.*, 247 F.3d 910, 914 (9th Cir. 2001), unless the interpretation is plainly erroneous or inconsistent with the regulation, *Auer v. Robbins*, 519 U.S. 452, 117 (1997). *See also In re Farmers Ins. Exch., Claims Representatives' Overtime Pay Litig.*, 481 F.3d 1119, 1129 (9th Cir. 2007) ("We must give deference to the DOL's interpretation of its own regulations through, for example, Opinion Letters."). Moreover, the Court must interpret the letters in a manner that does not conflict with the FLSA and regulations, *Adoma v. Univ. of Phoenix, Inc.*, 779 F. Supp. 2d 1126, 1137 (E.D. Cal. 2011), and may disregard them only if there is an unresolvable conflict.

Although perhaps a close call, the Court concludes that the regulations and the opinion letters are not fatally inconsistent. Because the agency's interpretations are entitled to a high degree of deference, *Imada*, 138 F.3d at 1297, and because the Court does not find an unresolvable conflict, the Court concludes that the letters and plain language of § 778.210 require an employer to multiply an employee's total earnings (including bonuses not exempted under § 207(e)) by the same percentage to satisfy FLSA's overtime compensation requirements under the "simultaneous method."[4]

### 2. Application to Facts of this Case

Plaintiff argues Defendant failed to properly calculate overtime on the STI Bonus, the points earned through the PTE program, and the value of the merchandise received through the Employee Discount Policy.

With respect to the STI bonus and the points received, the Court DENIES Defendant's

---

[4] Defendant also suggests the Court ignore the plain language of the DOL's letters because they "create some confusion," arguing that § 778.210 does not in fact "involve an exclusion from the regular rate at all." Dkt. No. 72 at 5. But the title of § 778.210's header refutes Defendant's contention; it reads:

> Subpart C. Payments that May be Excluded from the 'Regular Rate'
> Bonuses

8

1  summary judgment motion as Defendant failed to establish that it properly calculated the STI as a
2  percentage of total earnings, including all bonuses not falling under a statutory exemption.
3  Although Defendant contends in the alternative that under the apportionment method, *see*
4  § 778.209, Defendant met FLSA's overtime compensation requirements, the Court finds that there
5  is an absence of evidence supporting this contention. It is not clear from the record that the
6  amount of the bonuses received in fiscal June 2015 and fiscal August 2015 was properly
7  apportioned back over the relevant workweeks.[5]

    Defendant also argues that summary judgment as to the second cause of action is appropriate because § 204 does not create a private right of action against employers. The Court agrees that there is no private right of action under § 204. *See Johnson v. Hewlett-Packard Co.*, 809 F. Supp. 2d 1114, 1136 (N.D. Cal. 2011); *Villalpando v. Exel Direct Inc.*, No. 12-CV-04137 JCS, 2014 WL 1338297, at *18 (N.D. Cal. 2014). However, the Court does not grant summary judgment as to the second cause of action on this basis, because the action also alleges violations under §§ 510 and 1198, and Defendant does not contend that there is no private right of action under these statutes.[6]

    With respect to the value of merchandise discounts, the Court GRANTS Defendant's motion, finding that the merchandise discounts fall under a statutory exclusion and that overtime compensation was not warranted.

    Although merchandise discounts are not expressly listed as an exemption to the regular

---

[5] The Court rejects Defendant's additional argument that the Court may credit the premium paid to Plaintiff for working holidays against the overtime pay Plaintiff earned in other workweeks. Dkt. No. 71 at 3. Defendant does not cite any authority supporting its suggested interpretation of § 207(h). Moreover, other courts including the Ninth Circuit have rejected similar arguments, finding that an employer may only credit extra payments against overtime liability accruing in the same workweek. *See Herman v. Fabri-Centers of Am., Inc.*, 308 F.3d 580, 589 (6th Cir. 2002); *Howard v. City of Springfield*, 274 F.3d 1141, 1148 (7th Cir. 2001); *Haro v. City of Los Angeles*, 745 F.3d 1249, 1260 (9th Cir. 2014) (citing *Herman* and *Howard* decisions with approval); *Stiller v. Costco Wholesale Corp.*, No. 3:09-CV-2473-GPC-BGS, 2013 WL 5417134, at *3 (S.D. Cal. Sept. 26, 2013). The Court finds the reasoning of these decisions compelling, and declines to reject them in the absence of authority to the contrary.

[6] The Court notes that although the second cause of action may not proceed on § 204 grounds, the allegations that form the basis of § 204 violations may be used to support Plaintiff's claims under California's Unfair Competition Law and the California Private Attorney General Act. *See Byrd v. Masonite Corp.*, No. EDCV 16-35 JGB (KKX), 2016 WL 756523, at *7 (C.D. Cal. 2016).

rate, the Court finds that such discounts qualify under § 207(e)(1), which expressly excludes from the regular rate:

> sums paid as gifts; payments in the nature of gifts made at Christmas time or on other special occasions, as a reward for service, the amounts of which are not measured by or dependent on hours worked, production, or efficiency;

§ 207(e)(1).

Contrary to Plaintiff's argument, the Court does not read § 207(e)(1) to apply only to sums paid on "special occasions." Rather, the semicolon separates "sums paid as gifts" from "payments in the nature of gifts made [on] special occasions," thereby denoting two alternative means of triggering the exemption.

The federal regulations provide further support as they omit any reference to "special occasions."

> (b) Gift or similar payment. To qualify for exclusion under section 7(e)(1) the bonus must be actually a gift or in the nature of a gift. If it is measured by hours worked, production, or efficiency, the payment is geared to wages and hours during the bonus period and is no longer to be considered as in the nature of a gift. If the payment is so substantial that it can be assumed that employees consider it a part of the wages for which they work, the bonus cannot be considered to be in the nature of a gift. Obviously, if the bonus is paid pursuant to contract (so that the employee has a legal right to the payment and could bring suit to enforce it), it is not in the nature of a gift.

29 C.F.R. § 778.212(b); *see also Rau v. Darling's Drug Store, Inc.*, 388 F.Supp. 877, 879 (W.D. Penn. 1975) (finding that merchandise discounts were gifts, not based upon the number of hours worked, and thus not compensation to be included in the 'regular rate' calculation).

Here, the Employee Discount Policy became available to employees after 30 days of continuous employment, and the policy expressly provided that the discount was not pursuant to a contract and could be changed or varied in Best Buy's sole discretion.[7] Dkt. No. 64-8. Moreover, the discount was available to all employees without any restrictions based on the number of hours worked, production, or efficiency. *See id.* at ¶ 3. The DOL's interpretative guidance further

---

[7] Although Plaintiff contends that the Employee Discount Policy was pursuant to a contract, Plaintiff has offered no evidence to refute the plain language on the face of the Employee Discount Policy: "This Policy is not a contract . . . ." *See* Dkt. No. 64-8. Accordingly, there is no material issue in dispute as to this matter.

supports this interpretation. *See* 1962 DOLWH LEXIS 217 (stating that the Division did not regard as wages the "discounts on merchandise offered by many retail establishments to their employees"); *see generally Imada*, 138 F.3d at 1297.

Plaintiff relies on cases where the employer offered meal, board and lodging, and tuition allowances as support. *See Wang v. Chinese Daily News, Inc.*, 435 F. Supp. 2d 1042, 1057 (C.D. Cal. 2006), *aff'd* 623 F.3d 743 (9th Cir. 2010), *cert. granted, judgment vacated*, 132 S. Ct. 74 (2011) (meal allowance); *Marshall v. Valhalla Inn*, 590 F.2d 306, 308 (9th Cir. 1979) (meal allowance); *Walling v. Alaska Pac. Consol. Min. Co.*, 152 F.2d 812, 813 (9th Cir. 1945) (board and lodging); *Adoma*, 779 F. Supp. 2d at 1136 (tuition). The Court does not find these cases persuasive, as the cases primarily relate to the applicability of § 207(e)(2) as well as to reimbursements for an employee's "normal everyday expenses," such as costs incurred "in traveling to and from work, buying lunch, paying rent, and the like," which do enter the regular rate calculation. § 778.217(d); *see also* 29 U.S.C. § 203(m) ("'Wage' paid to any employee includes the reasonable cost, as determined by the Administrator, to the employer of furnishing such employee with board, lodging, or other facilities, if such board, lodging, or other facilities are customarily furnished by such employer to his employees."); *Walling*, 152 F.2d at 815 ("[I]t seems clear that the cost of board and lodging customarily furnished employees must also be included in the regular rate, particularly as Section 3(m) of the Act itself specifically provides that 'wages' include the reasonable cost of such board and lodging."). Plaintiff has cited no case relating to discounts on store merchandise, and the Court declines to extend the application of the cited cases to the circumstances here.

For these reasons, the Court rejects Plaintiff's contention that Defendant was required to pay overtime on the merchandise discounts, and GRANTS summary judgment as to the first and second causes of action insofar as the claims are based on the failure to pay overtime on the value of merchandise discounts.

**B.  Third Cause of Action: failure to pay wages within required time in violation of California Labor Code §§ 201, 202, 203**

California Labor Code § 201 provides: "If an employer discharges an employee, the wages

11

1  earned and unpaid at the time of discharge are due and payable immediately." Cal. Lab. Code
2  § 201(a). Section 202 provides: "If an employee not having a written contract for a definite period
3  quits his or her employment, his or her wages shall become due and payable not later than 72
4  hours thereafter . . . ." § 202(a). Finally, California Labor Code § 203 provides:

> If an employer *willfully* fails to pay, without abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 201.9, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.

Cal. Lab. Code § 203 (emphasis added). In this context, willfulness refers to an "intentional [ ] fail[ure] or refus[al] to perform an act which was required to be done." *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1201 (2008). "A 'good faith dispute' that any wages are due occurs when an employer presents a defense, based in law or fact which, if successful, would preclude any recovery on the part of the employee. The fact that a defense is ultimately unsuccessful will not preclude a finding that a good faith dispute did exist." *Id*. *See also Nordstrom Comm'n Cases*, 186 Cal. App. 4th 576, 584 (2010) ("There is no willful failure to pay wages [under Section 203] if the employer and employee have a good faith dispute as to whether and when the wages were due.").

The parties dispute whether Plaintiff resigned or was discharged. Plaintiff contends that she submitted a letter on September 3, 2014, giving Defendant notice that she would resign in two weeks. *See* Dkt. No. 67, ¶ 12; Dkt. No. 67-2. In a letter dated September 16, 2014, Defendant informed Plaintiff that her employment was terminated effective September 13, 2014 and that her final pay had been paid through the regular payout method. Dkt. No. 67-3. A screenshot attached to Plaintiff's declaration shows that Plaintiff was paid on September 16, 2014. Dkt. No. 67-4. Citing deposition testimony of Best Buy employees, Defendant contends that Best Buy paid Plaintiff her final wages on September 15, 2014, three days after Plaintiff allegedly resigned. *See* Dkt. No. 64-2 at 12 ("Q [T]he date of direct deposit for her would have been the 16th or the 15th? A The 15th."); *id*. at 14 ("On September 12th Star was scheduled to work a full shift. She decided midway through her shift that she didn't want to work there anymore . . . and she left.").

Defendant contends that § 202(a) gives employees three days to pay employees after they resign and that because Best Buy paid her on September 15, Plaintiff has no claim for untimely payment of her final paycheck. On the other hand, Plaintiff argues that she was terminated on September 13, 2014. The statute requires payment of final wages immediately when an employer is terminated. Thus, if Plaintiff was in fact terminated and Best Buy did not pay her final wages until September 16, 2014, Plaintiff would be entitled to penalties under § 203.

The Court finds summary judgment inappropriate as to this cause of action. First, this cause of action is derivative of her overtime compensation allegations, which have largely survived summary judgment. Second, there remain genuine issues of material fact as to (1) whether Best Buy terminated Plaintiff or whether she resigned, and (2) whether Plaintiff received her final wages on September 15 or September 16.[8] And, third, there also remain genuine issues of material fact as to the existence of a good faith dispute that would preclude Plaintiff's recovery. Accordingly, summary judgment as to this cause of action is DENIED.

### C. Fourth Cause of Action: failure to provide itemized wage statements in violation of California Labor Code § 226

California Labor Code § 226 requires an employer at the time that wages are paid to provide an accurate itemized statement that contains nine items. *See* Cal. Labor Code § 226(a). To recover under § 226(e), a plaintiff must show: (1) a violation of § 226(a) that (2) was knowing and intentional, and (3) an injury suffered as a result of the violation. *See Novoa v. Charter Commns., Inc.*, 100 F.Supp.3d 1013, 1025 (N.D. Cal. 2015). A violation of § 226 is "knowing and intentional" when the employer actually knows that it has omitted from a pay statement any item required by § 226(a); it is not enough merely to prove a violation of § 226(a). *See Willner v. Manpower Inc.*, 35 F.Supp.3d 1116, 1131 (N.D. Cal. 2014); *see also Novoa*, 100 F.Supp.3d at 1028. A plaintiff suffers an injury for purposes of § 226(e) if: (1) the employer fails to provide a wage statement altogether; or (2) the employer omits an item required by § 226(a) and the employee "cannot promptly and easily determine from the wage statement alone" one of four

---

[8] The Court rejects Defendant's sham affidavit argument, as it cannot conclude on this record that Plaintiff's assertions were made solely to create an issue of material fact and avoid summary judgment. *See Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 267 (9th Cir. 1991).

enumerated categories of information. *See* Cal. Lab. Code § 226(e)(1), (2); *Derum v. Saks & Co.*, 95 F.Supp. 3d 1221, 1229 (S.D. Cal. 2015).

Here, Plaintiff argues that her managers failed to timely approve her manual and corrective time entries to the company's electronic timekeeping system. Because of the delayed approval, Plaintiff contends that her wage statements for pay periods in February and March 2014 are inaccurate as they do not reflect the actual hours worked, or gross wages and net wages earned.

The Court finds there remain genuine issues of material fact, including, for example, whether the manager's failure to approve the manual entries was knowing and intentional. Additionally, insofar as Plaintiff's fourth cause of action relies on Defendant's alleged failure to pay overtime wages, the argument is derivative of her first and second causes of action, making summary judgment inappropriate here. Accordingly, the Court DENIES summary judgment as to the fourth cause of action.

### D. Fifth Cause of Action: failure to reimburse business expenses in violation of California Labor Code § 2802

Section 2802 provides that "an employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer." Cal. Lab. Code § 2802. "[T]he term 'necessary expenditures or losses' shall include all reasonable costs." *Id.*

Plaintiff contends that her managers instructed her to use her personal cell phone to call customers and the distribution warehouse, and to use her phone to look up information on the company website. Dkt. No. 67, ¶ 11. According to Plaintiff, her manager informed her that she would not be reimbursed for her cell phone expenses and that there was no policy providing for reimbursement of such non-travel expenses. *Id.* As a result, she did not submit a reimbursement request and was not reimbursed for the amount she spent on her personal cell phone. *Id.*

The Court DENIES summary judgment, as there remain genuine issues of material fact regarding whether Plaintiff's cell phone use was necessary and reasonable.

### E. Sixth Cause of Action: unfair competition in violation of Business and Professions Code § 17200

Section 17200 of the Business and Professions Code, also known as California's Unfair

14

Competition Law ("UCL"), prohibits certain "unlawful, unfair or fraudulent business act[s] or practice[s]." Cal. Bus. & Prof. Code § 17200. The UCL "borrows violations from other laws by making them independently actionable as unfair competitive practices." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1143 (2003). "A UCL action is equitable in nature; damages cannot be recovered. . . . 'Prevailing plaintiffs are generally limited to injunctive relief and restitution.'" *Id*. at 1144 (citations omitted); *see also Cortez v. Purolator Air Filtration Products Co.*, 23 Cal. 4th 163, 173, (2000) ("[C]ompensatory damages are not available in a UCL action."). Accordingly, Plaintiff's UCL cause of action only survives if the remaining derivative claims are equitable in nature.

To the extent Plaintiff's UCL claim is based on her allegations that Defendant failed to provide an accurate wage statement, the Court determines that § 226 provides for penalties rather than restitution and that because Plaintiff seeks penalties here, *see* Dkt. No. 59, ¶ 41, § 226 cannot be the predicate violation for the UCL claim.[9] *See Brewer v. Gen. Nutrition Corp.*, No. 11-CV-3587 YGR, 2015 WL 5072039, at *7 (N.D. Cal. Aug. 27, 2015) ("[T]he complaint seeks "damages and penalties" for the violations of section 226(a), which do not fall under the rubric of restitutionary relief provided by the UCL."); *Ordonez v. Radio Shack*, No. CV 10–7060 CAS MANX, 2011 WL 499279, at *6 (C.D. Cal. Feb. 7, 2011) ("Section 226(e) on its face provides for penalties rather than restitution and therefore cannot be the predicate violation on which to base[] plaintiff's UCL claim.").

Similarly, the Court finds that the UCL claim may not rely on § 203 as a basis. *See Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1402 (2010) (holding "section 203 penalties cannot be recovered as restitution under the UCL").

Finally, the Court finds that the UCL claim may be maintained to the extent it is predicated on Plaintiff's § 2802 claim. *See Ordonez,* 2011 WL 499279, at *6 ("The Court further concludes

---

[9] Plaintiff cites *Willner v. Manpower Inc.*, 35 F. Supp. 3d 1116, 1133 (N.D. Cal. 2014) and *Fobroy v. Video Only, Inc.*, No. C-13-4083 EMC, 2014 U.S. Dist. LEXIS 160365, at *14 (N.D. Cal. Nov. 14, 2014), for support. Because neither case recognizes the equitable requirement for predicate claims in a UCL action or offers reasoning distinguishing *Cortez* and *Korea Supply*, the Court respectfully declines to follow *Willner* and *Fobroy* here.

that the UCL claim may be maintained to the extent it is predicated on plaintiff's claim under Sections 221 and 2802."); *Nelson v. Dollar Tree Stores, Inc.*, No. 2:11-CV-01334 JAM, 2011 WL 3568498, at *5 (E.D. Cal. Aug. 15, 2011) ("[P]reviously incurred expenses may be recovered as restitution under the UCL."); *Brandon v. Nat'l R.R. Passenger Corp. Amtrak*, No. CV 12-5796 PSG VBKX, 2013 WL 800265, at *4 (C.D. Cal. Mar. 1, 2013) (holding that where unreimbursed business expenses are restitutionary, they are recoverable under the UCL); *Woo v. Home Loan Group, L.P.*, 2007 WL 6624925 at *4 (S.D. Cal. Jul. 27, 2007). Accordingly, Plaintiff's UCL cause of action survives insofar as it relies on § 2802 violations as the predicate.

### F. Seventh Cause of Action: failure to produce personnel file and employment records in violation of California Labor Code §§ 226(b), (c), 432, 1198.5

The seventh cause of action contests Defendant's alleged failure "to timely produce Harris's wage statements or a computer-generated equivalent, and a letter terminating Harris' employment." Dkt. No. 66 at 24. Plaintiff relies on three California labor code provisions. First, § 226(b) gives current and former employees a right to inspect or copy their employment records, and § 226(c) requires that the employer comply with a § 226(b) request as soon as practicable, but no later than 21 calendar days from the date of the request. Cal. Lab. Code § 226(b), (c).

Second, § 1198.5 provides that "[e]very current and former employee . . . has the right to inspect and receive a copy of the personnel records that the employer maintains relating to the employee's performance or to any grievance concerning the employee." Cal. Lab. Code § 1198.5. The employer must make the contents of the personnel records available for inspection at a reasonable time, but no later than 30 days from the request. *Id.*

Finally, under § 432, "[i]f an employee . . . signs any instrument relating to the obtaining or holding of employment, he shall be given a copy of the instrument upon request." *See* Cal. Lab. Code § 432.

Plaintiff made a written request in November 2014 for documents including her wage statements, payroll records, personnel files, and documents that relate to her holding or obtaining employment. Dkt. No. 69-14, Ex. L. Although in December 2014, Defendant produced some documents in response to Plaintiff's request, *see* Dkt. No. 64-2, Ex. G, Plaintiff argues that

16

Defendant failed to produce all required documents, including Plaintiff's wage statements and termination letter. Defendant moves for summary judgment as to all three labor code provisions.

To begin with, the Court agrees with Defendant that summary adjudication as to § 432 is appropriate. While §§ 226(c) and 1198.5 expressly include "former employees," the plain language of § 432 limits applicability to "employees or applicant[s]," omitting any reference to former employees. *See Arizona Elec. Power Co-op., Inc. v. United States*, 816 F.2d 1366, 1375 (9th Cir. 1987) ("When Congress includes a specific term in one section of a statute but omits it in another section of the same Act, it should not be implied where it is excluded."); *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal. 4th 1106, 1117 (1999) ("Where different words or phrases are used in the same connection in different parts of a statute, it is presumed the Legislature intended a different meaning."). Because Plaintiff does not dispute that the request for records was made after Plaintiff was no longer an employee, § 432 cannot apply here.

With respect to § 1198.5, the Court DENIES Defendant's motion, declining to interpret the term "personnel records" in a hyper-technical fashion. Common sense dictates that a termination letter "relates to" an employee's performance and that any failure to produce such letter within 30 days of the request would trigger liability under § 1198.5. *See generally Wellpoint Health Networks, Inc. v. Superior Court*, 59 Cal. App. 4th 110, 124 (1997) ("[Section 1198.5] intends a broad definition of 'personnel file' to preclude employers from assigning documents to files having some other name, and then refusing access to the documents on the ground that they are not contained in the 'personnel file.'").

Finally, with respect to § 226(b), the Court finds there remains a genuine issue of material fact as to whether Defendant's December 2014 production of the payroll register records fully satisfied the § 226(a) requirements relating to Plaintiff's wage statements. Accordingly, the Court DENIES Defendant's motion as to the seventh cause of action to the extent it relies on §§ 226(b) and 1198.5.

### G. Eighth Cause of Action: violation of Private Attorney General Act

Plaintiff's final cause of action asserts a claim under the California Private Attorney General Act ("PAGA") on behalf of "herself and other current and former employees" of

Defendant. Dkt. No. 59, ¶ 66. Under PAGA, "any provision of [the Labor Code] that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency [LWDA] . . . may, as an alternative, be recovered by an aggrieved employee on behalf of himself or herself and current or former employees." Cal. Lab. Code § 2699(a). "Recovery of civil penalties under the act requires proof of a Labor Code violation." *Arias v. Superior Court*, 46 Cal. 4th 969, 987 (2009).

Before an employee can commence a civil action under PAGA, the follow requirements must be met.

> A civil action by an aggrieved employee pursuant to subdivision (a) or (f) of Section 2699 alleging a violation of any provision listed in Section 2699.5 shall commence only after the following requirements have been met . . . . The aggrieved employee or representative shall give written notice by online filing with the Labor and Workforce Development Agency and by certified mail to the employer of the specific provisions of this code alleged to have been violated, including the facts and theories to support the alleged violation.

Cal. Lab. Code § 2699.3(a). The complaining employee may only file suit after the LWDA gives notice that it has decided not to investigate or cite the employer for the alleged violations (or if the LWDA does not act within certain time deadlines). Cal. Lab. Code § 2699.3(a)(2)(B). These administrative procedures must be exhausted before the civil suit may proceed. *See Caliber Bodyworks, Inc. v. Superior Court*, 134 Cal.App.4th 365, 382 (Cal.App.2d Dist. 2005) ("[P]laintiffs were required to comply with section 2699.3, subdivision (a)'s administrative procedures before pursuing causes of action for civil penalties based on violations of Labor Code provisions specified in section 2699.5. Their failure to plead compliance as to the causes of action seeking only civil penalties is fatal to those claims.").

Defendant contends that summary judgment is appropriate on two bases. First, it argues that Plaintiff cannot bring a PAGA claim for the failure to produce personnel and payroll records because Plaintiff failed to give LWDA notice of that specific claim. Second, it argues that because Plaintiff's "PAGA claim is entirely dependent on her other untenable claims, [Defendant] is entitled to summary judgment on this claim."

The Court rejects both bases. The only remaining statutes underlying Plaintiff's allegation

18

of failure to produce personnel and payroll records are §§ 226(b) and (c), and § 1198.5. The notice requirements of § 2699.3(a) do not apply to §§ 226(b) and (c), or § 1198.5. *See* Cal. Lab. Code § 2699.5. Moreover, because several of Plaintiff's predicate claims have survived summary judgment, the second basis does not apply. Accordingly, summary judgment as to the eighth cause of action is DENIED.

### IV. CONCLUSION

For the reasons stated, Defendant's motion for summary judgment is GRANTED IN PART and DENIED IN PART. The parties are directed to attend a case management conference set for August 16, 2016 at 2:00 p.m. to discuss the setting of case deadlines.

**IT IS SO ORDERED.**

Dated: 8/1/2016

HAYWOOD S. GILLIAM, JR.
United States District Judge